JOHN A. BRYAN, Plaintiff in Error,

*vs.*

THOMAS REYNOLDS, Defendant in Error.

ERROR TO THE CIRCUIT COURT OF DANE COUNTY.

An agreement to prosecute and superintend, in the capacity of agent and attorney, a private claim before the legislature, is against public policy and void, and no action can be maintained thereon, or for services thus rendered.

A person may lawfully make a public argument before a committee of the legislature, or before the legislature itself, if permitted to do so, in favor of or against a public or private act, and an agreement by which he was promised to be paid for such service, would be enforced.

THIS was an action of assumpsit, commenced by declaration, by the plaintiff in error, against the defendant in error, in the Dane county Circuit Court, to recover two thousand dollars for services rendered by the plaintiff for the defendant.

The declaration recites that on the 15th day of January, 1851, the defendant did retain and employ the plaintiff, as his true and lawful attorney and agent, to prosecute and superintend, before the legislature of the state of Wisconsin, in such mode and manner as the plaintiff might choose to present the same, a certain claim which the defendant had, or claimed to have, against the state of Wisconsin, for the construction of the Portage Canal (so called), connecting the Fox and Wisconsin Rivers at Fort Winnebago; and in consideration that the said plaintiff did then and there undertake and promise to act as the attorney and agent of the said defendant, in and about the business aforesaid, the defendant promised and agreed with the plaintiff, that in the event that the said claim of the said defendant should pass and be allowed to him by the said legislature, at any time, for any sum or amount, he would allow and pay to the said plaintiff out of said claim, ten per centum of the whole amount allowed, to be paid out of the same fund and in the same manner the allowance should be directed by the legislature to be paid defendant.

The plaintiff avers, that under said agreement, at the regular session of the legislature held at Madison, the capital of the state, for the year 1851, he caused the claim of the defendant to be presented to the legislature, and there prosecuted and superintended the same, faithfully, as the agent and attorney of the defendant.

: And further; that such proceedings were had by the legislature, upon and in relation to said claim, at the session thereof, in the year 1851, and the session thereof in the year 1852, as resulted in the allowance of the sum of ten thousand and thirty dollars and sixty-nine cents on account of said claim, and an appropriation, for that amount, to the defendant, for the actual and identical claim, and no other, which the plaintiff was employed and retained to prosecute and superintend, and did prosecute and superintend; and that the act of said legislature making said allowance and appropriation was approved by the governor of the state on the 7th day of April, 1852.

The plaintiff also avers that by said act of the legislature, said appropriation to said defendant was directed to be paid out of the Fox and Wisconsin River improvement fund; and that afterwards the said defendant did receive the amount in full so appropriated, in warrants, or script, known as the Fox and Wisconsin improvement script.

The plaintiff further avers that by these facts recited, he became entitled to have of the appropriation, and of the defendant, ten per centum on the appropriation, to wit: the sum of one thousand and three dollars and seven cents: and that in consideration thereof the defendant promised to pay, &c.

The declaration contains, also, a count for work and labor, and concludes with a general breach, by non-payment, &c.

To the first or special count of the plaintiff's declaration, the defendant filed a special demurrer; and assigned the following causes of demurrer, to wit:

1. There is no sufficient allegation of performance on the part of the plaintiff, of the terms of the alleged contract.

2. The contract set up in the said count, if any such were made, is against public policy, and therefore void.

.3. There is no sufficient averment of a breach of the alleged contract by the defendant.

4. Said count is in other respects uncertain, informal and insufficient.

To the second count in the declaration the defendant pleaded the general issue: joinder in demurrer.

The court below sustained the demurrer to the special count; and upon appeal to the court, the plaintiff's counsel, to maintain the issue upon the second count in the declaration, offered to introduce the contract, the material and effective facts of which are quoted in the opinion of the court, *post;* but the counsel for the defendant then and there objected to the introduction of said contract in evidence, on the ground that the same was against public policy, and therefore void; which objection was sustained by the court, and the admission of the contract in evidence refused for the reason aforesaid. To which opinion of the court the plaintiff's counsel excepted. Whereupon the court below entered final judgment in favor of the defendant.

*Smith & Keyes*, for plaintiff in error.

A doubtful matter of public policy is not sufficient to invalidate a contract. An agreement is not void on this ground unless it expressly and unquestionably contravenes public policy, and be manifestly injurious to the state. *Chitty on Cont.* 663; *Richardson vs. Mellick*, 2 *Bing.* 242; 9 *Moore*, 464; *Roche vs. O'Brien*, 1 *Ball & B.* 338.

This suit was brought by the plaintiff to recover a certain sum of money for services as attorney, in obtaining from the state the passage of a law appropriating ten thousand and odd dollars to defendant, to whom the state was justly indebted. Under the constitution, our law provides that any person having a claim against the state, may bring suit in the Supreme Court, after such claim has been presented and disallowed by the legislature. Therefore, it cannot be said to be against public policy to present such claim to the legislature, or to employ some competent person to do it.

It would not be said to be against public policy to employ an

Bryan vs. Reynolds.

attorney to present the same case before the Supreme Court; and since the state may be sued, it would seem but a measure of prudence to have such claim well presented to the legislature, and it would be better to the state that it should be done, for it might save litigation and expense.

*Abbott, Clark & Coit*, for defendant in error.

The contract set up by the plaintiff in his declaration is *against public policy*, and therefore void.

In the cases of *Wood vs. M'Cann* (6 *Dana*, 366), and *Clippinger vs. Hepbaugh* (5 *Watts & Serg.* 315), it was decided that a contract to procure or endeavor to procure, the passage of an act of the legislature by any sinister means, or even by using a *personal influence* with the members, would be void, as being inconsistent with public policy, and the integrity of our political institutions.

The contract set up by the plaintiff being for a portion of the sum recovered, is *champertous*, and therefore illegal and void, and could not be enforced at common law. *Thurston vs. Percival*, 1 *Pick.* 415; *Lathrop vs. Amherst Bank*, 9 *Mit.* 489; *Byrd vs. Odem*, 9 *Ala.* 755; 2 *Sandf.* 141.

*By the Court*, WHITON C. J. The written contract declared upon in the first count of the declaration, is in the following words: "Know all men by these presents, that I, Thomas Reynolds, of Fort Winnebago, in the state of Wisconsin, have retained and employed, and by these presents do retain and employ, John A. Bryan, now of Madison in said state, as my true and lawful attorney and agent, to prosecute and superintend my claim for certain services as contractor to the state, for the construction of the Portage Canal, at Fort Winnebago.

"Such claim to be brought before the legislature in such mode and manner as my said agent and attorney may choose to have the same presented. And I hereby promise and agree, to and with the said John A. Bryan, to allow, and pay, out of said

claim (if the same do pass the legislature at any time for any sum), ten per cent. on the whole amount of such allowance, to the said John A. Bryan, to be paid out of the same fund, and in the same manner as the said claim shall be directed to be paid in said act, to myself.

"And I do hereby authorize and direct the proper officers, whoever they may be, having charge of the payment of the amount to be allowed me, to pay, or cause to be paid to the said John A. Bryan, ten per cent. on the whole amount so allowed, to the said Bryan, and to take his receipt therefor ; whose receipt shall be the same to me as if I were to execute it myself."

This agreement was signed by defendant.

We are of opinion that no action can be maintained upon it, because the consideration for the promise of the defendant was contrary to public policy.

It is certainly contrary to public policy to authorize or encourage the use of improper influences with the legislature to procure the passage of a law ; and contracts which have been made for the payment of money in consideration that the promisee would use such influences, have uniformly been declared void ; and a contract by which the person to whom the money was to be paid, bound himself to use his influence and personal solicitation with the members, has been always held to be of this description. *Wood vs. McCann*, 6 *Dana R.* 366 ; *Clipinger vs. Hepbaugh*, 5 *Watts & Sergent*, 315.

The reason is, that it is important to just legislation and most essential to the public interest, that the members of the legislature should be free from any influence which might deceive or corrupt them. A person may lawfully make a public argument before a committee of the legislature, or before the legislature itself, if he should be permitted to do so, in favor of, or against a public or private act of the legislature ; and an agreement by which he was promised to be paid for such a service, could be enforced ; because a public discussion could not tend to deceive or corrupt the legislature ; while personal solicitation and influence might produce that result. We have had some difficulty in determining that the contract sued upon in this case, was a

contract which stipulated for the use of the influence of the plaintiff with the members of the legislature in favor of a law allowing to the defendant his claim for services, but upon reflection we think that to be the case.

The plaintiff was to prosecute and superintend the claim before the legislature. How could this be done without resorting to personal solicitation with the members?

We know of no way by which a person who is not a member of the legislature can prosecute or superintend a claim before that body, except by means of the members themselves, or some of them. He could not therefore comply with the contract on his part, without resorting to personal solicitation with the members of the legislative body. We therefore think that the contract was by its terms, an agreement to pay money for a consideration which is inconsistent with public policy, and that the agreement is for that reason void.

It was contended by the counsel for the plaintiff, that the legislature, by providing that suits might be brought in this court against the state, upon claims which have been rejected by the legislature, have changed the law relative to contracts for services in prosecuting claims which must be presented to, and rejected by, the legislature, before they can be the subject of a suit at law. It was argued that an attorney might lawfully engage to prosecute a claim against the state to judgment; and that in order to lay the foundation for a suit in this court, it would be necessary to present the claim to the legislature.

This, it was insisted, would not be contrary to public policy, but in strict conformity to a law of the state. It is a sufficient answer to this argument to say, that this was not the contract declared upon. The contract entered into between these parties, related solely to services before the legislature, and which could not be performed without resorting to the use of improper influences with the members of that body.

We must, for these reasons, affirm the judgment.