Houlton vs. Nichol.

HOULTON, Respondent, vs. NICHOL, Appellant.

*May 2 — May 22, 1896.*

*Contracts: Public policy: Lobbying: Procuring the opening of public lands to settlement.*

| 93 | 393 |
| 100 | 400 |

| 93 | 393 |
| s33 LRA | 166 |
| 42 LRA | 347n |
| 48 LRA | 294n |
| 54 LRA | 410n |

Plaintiff, an experienced land explorer, who had by investigation become satisfied that certain public lands were in fact free from any valid claim under railroad grants by reason of which they had been kept out of the market, and that they might legally be thrown open to settlement, agreed to instruct defendant as to such lands and the method of obtaining a tract thereof under the land laws of the United States, and to do all that was necessary or could be done to bring said lands into market and enable defendant to acquire title; the defendant on his part agreeing to pay plaintiff ten per cent. of the value of any tract of such lands he might so acquire. Thereafter plaintiff made such presentation before the Secretary of the Interior as to satisfy that officer that the lands should be thrown open to settlement under existing laws. Such action was not urged by plaintiff as a favor but as a matter of right. No legislation was had, solicited, or required. *Held* that, as the contract did not by its terms or by necessary implication require or contemplate the performance of any act of a corrupt character, or the resort to methods having a corrupting tendency, it was not void as against public policy.

Houlton vs. Nichol.

APPEAL from a judgment of the circuit court for Bayfield county: JOHN K. PARISH, Circuit Judge. *Affirmed.*

Plaintiff, at the time of the agreement hereinafter mentioned, was a woodsman and pine-land explorer of large experience, well versed in respect to the location of valuable timber lands on the government domain in northwestern Wisconsin, and the methods to be pursued in order to legally acquire lands under the land laws of the United States. There was a class of such lands that had been kept out of the market for many years on account of a supposed right thereto under certain railroad grants. Plaintiff, by investigation at the general land office, became satisfied that such lands were in fact free from any valid claim under railroad land grants, that they might legally be thrown open to settlement, and that persons might thereupon legally settle thereon and be entitled by virtue of such settlement, to priority under the homestead and pre-emption laws of the United States and the established practice of the general land office. Defendant desired to obtain a tract of such land. Plaintiff and defendant entered into an agreement, wherein and whereby the former agreed to instruct the latter in respect to such lands and the method of obtaining the same under the land laws of the United States, and to do all that was necessary in order to have such lands thrown open to settlement, so that the filing of claims might be made thereon, and defendant agreed, in consideration thereof, to pay plaintiff ten per cent. of the value of any tract of such land he might thereby acquire. Pursuant to such agreement, plaintiff furnished to defendant the minutes and description of 160 acres of such lands, and furnished him the necessary information in respect to complying with the land laws of the United States in order to obtain title thereto, through and by means of which defendant finally acquired such land. The value thereof was about $8,000, and the plaintiff claimed as his compensation $800. This is substan-

tially the cause of action set forth in the complaint and established by the evidence.

Certain parties made adverse claims to the land, which defendant extinguished by paying $150. On that ground he claimed, on the trial, that plaintiff failed to fulfill his contract by failing to do all that was necessary to secure to defendant his title. Defendant further claimed that the $150 should be allowed to him by way of recoupment, but no such claim was made by answer in the case. A demurrer to the complaint, on the ground that it fails to state a cause of action, was overruled by the court. At the close of the testimony defendant moved to dismiss the action on the same ground. Verdict was rendered in favor of plaintiff for $700 by direction of the court. A motion was made to set aside the verdict and for a new trial, which motion was overruled. Judgment was entered in plaintiff's favor, from which this appeal was taken.

The cause was submitted for the appellant on the brief of *Brossard & Colignon*, and for the respondent on that of *Loud & O'Brien.*

Counsel for the appellant contended, *inter alia*, that the contract upon which this action is brought tends to interfere with and to control the operations of the Interior Department of the United States and is void, especially as the compensation provided for is contingent, and as the person who undertook to perform the services in the department is a nonprofessional man, and when.he rendered the services had not been admitted to practice in the department. 3 Am. & Eng. Ency. of Law, 877; 9 id. 900; Greenhood, Pub. Pol. 357, rule 300; *Tool Co. v. Norris*, 2 Wall. 45; *Meguire v. Corwine*, 101 U. S. 108; *Oscanyan v. Arms Co.* 103 id. 261; *Elkhart Co. Lodge v. Crary*, 98 Ind. 238, 49 Am. Rep. 746; *Wildey v. Collier*, 7 Md. 273, 61 Am. Dec. 346; *Wight v. Rindskopf*, 43 Wis. 344; *Fauri v. Morin's Syndics*, 4 Martin, 39, 6 Am. Dec. 701; *Fuller v. Dame*, 18 Pick. 472; *Hatzfield v. Gulden,*

7 Watts, 152, 32 Am. Dec. 750; *Filson's Trustees v. Himes*, 5 Pa. St. 452, 47 Am. Dec. 422; *Buck v. First Nat. Bank*, 27 Mich. 293, 15 Am. Rep. 189. A contract for the performance of services in general terms, as an agent or attorney, and for the exertion of one's personal influence and solicitation to secure the passage of a private or public act, is void as being prejudicial to sound legislation and against public policy. The tendency to corruption in such contracts places them beyond the pale of the courts, whether anything improper is contemplated by the contracting parties or not. *Bryan v. Reynolds*, 5 Wis. 200; *Chippewa V. & S. R. Co. v. C., St. P., M. & O. R. Co.* 75 Wis. 224, and cases cited on pages 244, 245; *Spaulding v. Ewing*, 149 Pa. St. 375; *Houlton v. Dunn*, 60 Minn. 26; 9 Am. & Eng. Ency. of Law, 898; Greenhood, Pub. Pol. 361, rule 300; *Weed v. Black*, 2 MacArthur, 268; *Clippinger v. Hepbaugh*, 5 Watts & S. 315, 40 Am. Dec. 519; *Powers v. Skinner*, 34 Vt. 274, 80 Am. Dec. 677.

MARSHALL, J. The principal question here presented is, Was the contract entered into between plaintiff and defendant void as against public policy? And that turns on whether it embraces, by its terms or by necessary implication, an agreement to do an illegal act or to resort to secret and improper tampering with official action, either legislative or otherwise, to effect the purposes of the agreement, or that such was its tendency. If, by its terms or by necessary implication, the agreement stipulated for corrupt action or personal solicitation in the nature of lobbying, or tended directly to such results, then it is void; and if such facts appear satisfactorily the court should not hesitate to put the seal of condemnation upon it. The rules governing this subject are as old, at least, as the common law, have been long and firmly established in our jurisprudence, and must be rigidly enforced by courts of justice, else purity and integ-

Houlton vs. Nichol.

rity in the administration of government will be seriously
imperiled. All agreements which tend to introduce personal
influence and solicitation as elements in procuring and in-
fluencing legislative action, or action by any department of
the government, are contrary to sound morals, lead to inef-
ficiency in the public service, and come under the condemna-
tion of the rule here under consideration. The following
are a few of the cases that might be cited in support of the
foregoing proposition: *Tool Co. v. Norris*, 2 Wall. 45; *Elk-
hart County Lodge v. Crary*, 98 Ind. 238; *Lyon v. Mitchell*,
36 N. Y. 235; *Winpenny v. French*, 18 Ohio St. 469; *Mills
v. Mills*, 40 N. Y. 543; *Milbank v. Jones*, 127 N. Y. 370;
*Trist v. Child*, 21 Wall. 441; *Powers v. Skinner*, 34 Vt. 274;
*Bryan v. Reynolds*, 5 Wis. 200; *Fuller v. Dame*, 18 Pick.
472; *Chippewa Valley & S. R. Co. v. C., St. P., M. & O. R.
Co.* 75 Wis. 224. In the last case there is a very exhaustive
discussion of the general subject in an opinion by Mr. Justice
CASSODAY, including numerous citations of authorities, which
might be extended to include all reputable courts, in aid of
the views above expressed. There is no failure exhibited
anywhere to rigidly maintain the high standard of sound
morals in public affairs which a correct application of the
rule here invoked requires. In *Marshall v. B. & O. R. Co.*
16 How. 314, the learned judge who wrote the opinion said,
in effect, public policy and sound morals imperatively require
that courts shall condemn every act, and pronounce void
every contract, the elements or probable tendency of which
would be to sully the purity or mislead the judgment of
those to whom official position has been intrusted; and this
court, in *Chippewa Valley & S. R. Co. v. C., St. P., M. & O.
R. Co., supra*, quoting with approval from *Clippinger v.
Hepbaugh*, 5 Watts & S. 315, said, in effect, that 'it matters
not that nothing improper is done or expected to be done.
It is enough if such is the tendency of the contract, that it
is contrary to sound morality and public policy, *leading*

Houlton vs. Nichol.

*necessarily,* in the hands of designing and corrupt persons, to improper tampering with public officers, and the use of an extraneous secret influence over an important branch of the government.   It may not corrupt all; but if it corrupts or tends to corrupt some, or if it deceives or tends to deceive some, that is sufficient to stamp its character with the seal of disapproval before a judicial tribunal.'

As applied to contracts like the one before us, the dangers and mischiefs that may arise from allowing parties to make merchandise of mere personal solicitation and influence are what the law seeks to guard against, by closing the doors of the courts securely against all efforts to enforce, or to secure the fruits of, agreements that involve such elements as a subject of sale, either expressly or by necessary inference.

Does the agreement under consideration come within the condemnation of the salutary rule referred to?   That is the question.   Unless it does, clearly, the contract should be upheld.   As very truly said by Sir GEORGE JESSEL, M. R., in *Printing & N. R. Co. v. Sampson,* L. R. 19 Eq. 462: " It must not be forgotten that you are not to extend arbitrarily those rules which say that a given contract is void as being against public policy, because if there is one thing which more than another public policy requires it is that men of full age and of competent understanding shall have the utmost liberty of contracting, and that their contracts when entered into freely and voluntarily shall be held sacred and shall be enforced by the courts of justice.   Therefore you have this paramount public policy to consider — that you are not lightly to interfere with this freedom of contract."   This means no more, we take it, than that it should be made to appear clearly — that is, beyond reasonable controversy — that the contract is void, as contrary to law or sound morals, else it should be sustained.

In the light of the foregoing, the contract in question

Houlton vs. Nichol.

must be subjected to judicial interpretation in order to determine whether it contains the fatal element or not; for it cannot be seriously contended that by its terms, either as set forth in the complaint or established by the evidence, it necessarily required the doing of anything of an improper character or necessarily tended to any such thing. Plaintiff agreed to furnish defendant with minutes of desirable lands on the public domain upon which to locate, and to instruct him in respect to what he should do as a settler on such lands in order to secure priority under the land laws of the United States, and to do all that was necessary or could be done to bring the land in question into market and enable defendant to acquire title thereto. Wherein does this language contemplate the doing of anything illegal? The intention of the parties must be gathered from the language they used, from the contract actually made, in the light of attending circumstances, the same as in any other case. If, properly construed, it does not, by its terms or by necessary implication, contain anything illegal or tend to any violation of sound morals, the fatal element should not,— through an overzealous desire to fortify against the deplorable effects of lobbying contracts, strictly so called, which all recognize and should unhesitatingly condemn,— be injected into it by mere suspicion and conjecture that the parties intended to do some illegal act or a legal act by illegal means, or that the agreement might have probably led to improper influences upon, or tampering with, official conduct, and thereby defeat the contract.

It is sometimes lost sight of that the presumptions in human affairs are in favor of innocence rather than of guilt, and that such rule applies in testing such a contract as the one we have here by the principles of sound morals. *McBratney v. Chandler,* 22 Kan. 692. In *Salinas v. Stillman,* 14 C. C. A. 50, 66 Fed. Rep. 677, the agreement between the parties provided that a portion of the moneys eventually

to be derived from the United States, under an act to purchase the Ft. Brown reservation, should be paid to a certain agent, who was to procure the purchase. The court, citing *Trist v. Child*, 21 Wall. 441, in support of the proposition that contracts to aid in procuring legislation are not necessarily unlawful, said, in effect, that, as the bill does not show the character of the services to be rendered, the presumption is that they are lawful rather than unlawful. *Bryan v. Reynolds*, 5 Wis. 200, decided by this court many years ago, and which has often been cited with approval in other jurisdictions, is to the same effect. There was an agreement to prosecute and superintend, in the capacity of agent and attorney, a private claim before the legislature. The court held that, under a proper interpretation of the contract, it contained, by its terms, an agreement to pay money in consideration of influence by way of personal solicitation of members of the legislature in favor of the desired legislation. The following language was used by the learned judge who delivered the opinion: "We have had some difficulty in determining that the contract sued upon in this case was a contract which stipulated for the use of the influence of the plaintiff with the members of the legislature in favor of a law, . . . but upon reflection we think that to be the case. . . . We know of no way by which . . . plaintiff could comply with the contract on his part without resorting to personal solicitation with the members of the legislative body. We therefore think that the contract was, by its terms, an agreement to pay money for a consideration inconsistent with public policy."

To the same effect is *Chippewa Valley & S. R. Co. v. C., St. P., M. & O. R. Co.* 75 Wis. 224, where this court, quoting with approval from *Tool Co. v. Norris*, 2 Wall. 45, and *Oscanyan v. Arms Co.* 103 U. S. 261, to the effect that agreements to influence the action of the legislative or other branches of the government by personal solicitation or in-

Houlton vs. Nichol.

fluence are void as against public policy without reference
to the question of whether improper means are contemplated,
held that the law looks to the general tendency of such
agreements, and closes the doors to temptation by refusing
their recognition in any of the courts of the country; but,
in applying the principle to the case in hand, the court held
that the language of the contract was such that the plaint-
iff, in carrying it out, must necessarily have resorted to
methods classed as lobbying; that, though the contract did
not, in terms, require anything of an improper character,
it did so impliedly, *as performance necessarily* led to meth-
ods that come within the condemnation of the law; thereby
recognizing that the test is, Does the contract, by its terms
or by necessary implication, require the performance of acts
of a corrupt character or which have a corrupting tendency?
Obviously, when the learned judge in *Tool Co. v. Norris*, 2
Wall. 45, so often quoted and approved, said that the law
looks to the tendency of such agreements, and closes the
doors of the courts to them, and that their invalidity turns,
not on whether improper influences are intended, but upon
their corrupting tendency, he referred to agreements to do
acts in themselves contrary to public policy, or agreements
the performance of which, by necessary inference, required
or contemplated the resort to methods having a corrupting
tendency; that is all.

In *Trist v. Child*, 21 Wall. 441, the agreement was for
the influence of a lobbying agent to bring about the pas-
sage of a law for the payment of a private claim, without
reference to it merits, by means of personal influence and
solicitation. The court held the contract void, and there
clearly pointed out the distinction between agreements for
services that may, and such as may not, properly be entered
into to obtain legislative or executive action, and, in effect,
said that the preparation of petitions, taking of testimony,
collecting of facts, preparing of arguments, and submitting

them, orally or in writing, to committees or other proper authority, and services of like character, which are intended to reach only the reason of those to be influenced, are legit- imate. They are not to be classed with contracts for per- sonal solicitation or the means customarily resorted to by the lobbyist. It is upon the latter that the law puts the seal of condemnation; not upon the former. To the same effect are *Spaulding v. Ewing*, 149 Pa. St. 375; *Powers v. Skinner*, 34 Vt. 275, and *Chippewa Valley & S. R. Co. v. C., St. P., M. & O. R. Co.* 75 Wis. 224. In *Powers v. Skinner*, *supra*, the court held that a contract to labor faithfully be- fore the legislature to effect a desired end was not by its terms illegal; but the trial court found, in addition, that it contained an agreement that the plaintiff should solicit mem- bers in an individual way, as opportunity therefor was pre- sented, and, because of such element, that the contract was void.

A contract somewhat similar to the one under considera- tion, in *Houlton v. Dunn*, 60 Minn. 26, was held void as against public policy; but the court appears to have rested the decision, not so much on the contract, as on what was done under it and done before it was entered into. The evidence showed that plaintiff attended sessions of Con- gress, appeared before its committees, and employed coun- sel to urge the passage of a bill forfeiting lands to the gov- ernment, and to open them to settlement in such a way as to secure priority of settlers, thereto. So far as we can gather from the reported case, all acts done in regard to obtaining legislation were prior to the making of the agreement.

There was really nothing in the language or purposes of the contract, viewed in the light of attending circum- stances and what was actually done, showing that im- proper influence was contemplated, or that there was any tendency to that end. There was no personal soliciting of members of Congress or the officers of the Interior Depart-

ment. The carrying out of the contract did not require or lead to any such thing, for it was, so far as relates to any official action, a mere agreement to promote the enforcement and application of existing laws and established regulations of the Interior Department to existing conditions, to the end that persons having a right to select and acquire lands on the public domain might exercise such right. This required only the collecting of facts, and presenting them to the proper officers, and making arguments thereon in respect to the legal status of the lands under the circumstances, and the rights of parties, under such existing laws and regulations, to acquire such lands. The fact that plaintiff was not a member of the legal profession makes no difference with the legitimate character of his services, in the face of the undisputed facts that such services required special knowledge and training, and that plaintiff, by years of study and experience, had qualified himself to render valuable services to his employers. Under these circumstances, to infer that the services contracted for were other than such as are sanctioned by *Trist v. Child*, 21 Wall. 441,— the collecting of facts, making of arguments, and promoting action by appeals to reason,— is rather to reverse the rule which presumes innocence rather than guilt in the affairs of life. So far as *Houlton v. Dunn, supra,* is inconsistent with the decision in this case, we are not disposed to follow it, but to hold that, unless the contract was for the performance of some act illegal *per se,* or to do something of itself of a corrupting tendency, or by its terms or by necessary implication it contemplated a resort to improper means, such as personal solicitation or influence, something other than an appeal to the reason of the department officers whose action was sought, or to obtain their action as a favor instead of as a right, it should be upheld.

So far as appears from the evidence in this case, plaintiff had acquired all his information in respect to the legal status

of the lands in question, their location and value, before the contract was made with the defendant.    No legislation was had, solicited, or required.    The only thing plaintiff did after making such contract, and the only thing contemplated, was to make such presentation before the Secretary of the Interior as to satisfy such officer of the legal status of the lands and that they should be thrown open to settlement under existing laws, which would secure to the first settler thereon priority thereto; and there is no element in the agreement, the performance of which, by necessary or reasonable inference, tended to any other result.    It appears that plaintiff did not go before such department and make such presentation and urge such action as a favor to his principals, but as a right to which they, and all other persons similarly situated, were entitled.    Looking at the contract and its tendency, as above stated, the elements requisite to warrant the court in condemning it as contrary to public policy are absent; hence it must be sustained as a binding agreement between the parties.

The other questions raised have been considered, but we do not deem them of sufficient importance to more than mention them, so that it may be seen that they have not been overlooked.    There is no reversible error that we perceive in the record.

*By the Court.*— Judgment affirmed.

As to the validity of lobby contracts and contracts of a similar character, see note to *Houlton v. Dunn* (60 Minn. 26), in 30 L. R. A. 737.
— REP.