

# THE ATTORNEY GENERAL

## OF TEXAS

GROVER SELLERS

ATTORNEY GENERAL

AUSTIN 11, TEXAS

Honorable A. E. Hickerson
County Auditor
Montgomery County
Conroe, Texas

Dear Sir:

Opinion No. O-6380
Re: Valuation contract between
Montgomery County and the
firm of Pritchard and Abbott

We are in receipt of your communication of recent date requesting the opinion of this department on the above stated matter. Also, we have received briefs prepared by the attorneys representing the County Judge.

We quote from your letter as follows:

"On Monday, January 8, the Commissioners' Court of Montgomery County sitting in Regular Monthly Session and conducting its regular monthly business, was presented with an application from Pritchard & Abbott, Valuation Engineers of Fort Worth, Texas

"In discussing the matter, the County Judge, after expressing opposition to the contract, left the Court Room. Then, the four remaining Commissioners organized and elected one Commissioner to be Presiding Officer in the absence of the County Judge, at which time they approved a contract with Pritchard & Abbott.

"For your convenience, I am enclosing a copy of the contract approved by the four Commissioners, also a copy of the Docket Items covering the organization of the Court and the approval of the Contract.

"I am advised that the authority for four commissioners to approve a contract in the absence of the county judge, is in the case of Dalton vs. Alley, 215 S.W. 439; also 110 Texas, page 68.

"Will you please advise me whether I can legally approve payments to Pritchard & Abbott on the contract. Also advise me as to the legality of the construction of the contract."

"The contract submitted by you reads as follows:

"STATE OF TEXAS
COUNTY OF MONTGOMERY      KNOW ALL MEN BY THESE
PRESENTS:

"That, WHEREAS, the Commissioners' Court of
MONTGOMERY County, Texas, has dtermined that it would
be wise and to the best interest of said County for it
to employ experts skilled in the matter of appraising
and valuing oil and gas properties and public utility
properties in said County, said experts to compile and
furnish data and information to said Court sitting as
a Board of Equalization for the purpose of equalizing
valuations of such properties as compared with other
property valuations in said County for tax purposes for
the year 1945, and said data and information to be made
available in respect to all of such properties properly
and lawfully coming before it for consideration in the
equalization of values upon renditions made by the owners
thereof, or upon renditions made by the Tax Assessor
where the owner, or owners, may fail to render the same;
and,
"WHEREAS, said Court finds that Pritchard and Abbott,
a partnership of Fort Worth, Texas, are skilled in such
matters and have scientific and technical knowledge in
respect to the appraising and valuing of such properties
and many years experience in the matter of appraising and
valuing such properties; and

"WHEREAS, Pritchard and Abbott, have proposed to said
Commissioners' Court of MONTGOMERY County that they will
gather and compile information relating to the value of
oil and gas and public utility properties as of January 1,
1945, and make said information completely available to
said Court, to be used by it as it may see fit in determin-
ing what values should be assigned to said properties
properly coming before it for consideration; and will
charge for their services a sum of $10,000.00 (Ten
Thousand Dollars).

"IT IS THEREFORE AGREED by and between MONTGOMERY
County, Texas acting herein by and through its Commissioners
Court, Party of the First Part, and Pritchard and Abbott,
of Tarrant County, Texas, Parties of the Second Part as
follows:

"Parties of the Second Part agree to compile a
complete list of the record owners of all oil and gas
producing properties wherever situated and located in
Montgomery County, Texas, and all undeveloped leases and
royalty interests adjacent thereto, as of January 1, 1945,

said compilation and record to show the particular interest or interests therein owned; and also a complete list of all public utility properties located in said County as of January 1, 1945.

"Parties of the Second Part also agree to secure and make available for the use of Party of the First Part information showing the values of said properties to be considered by Party of the First Part as it may deem fit in determining the proper values for tax assessment purposes for 1945, to be assigned to such of said properties as may come before the Party of the First Part sitting as a Board of Equalization for consideration upon renditions made by the owners thereof, or upon renditions made by the tax assessor where the owner, owners, fail or refuse to render the same.

"FOR AND IN CONSIDERATION of the skilled services, technical knowledge and experience of Parties of the Second Part in the performance of the obligations devolving upon them hereunder, and in consideration of the information given and assistance furnished by them to Party of the First Part in undertaking to value and equalize the value of said properties properly coming before it for consideration at its equalization hearings in the year 1945, Party of the First Part agrees and obligates itself to compensate Parties of the Second Part as follows:

"FOR THE SERVICES HEREIN AGREED to be performed Second Party shall receive the said sum of Ten Thousand ($10,000.00) Dollars, to be paid out of the General Fund of Montgomery County.

"IT IS FURTHER AGREED AND UNDERSTOOD by both Parties that Montgomery County, Texas, will issue, or cause to be issued to Pritchard and Abbott warrants drawn against the General Fund of said Montgomery County, Texas, and payable out of the current revenues of 1945.

"PARTY OF THE FIRST PART hereby specially contracts and obligates itself to, at any time same may become necessary, pass and enter of record such orders as may be proper and necessary to legalize and facilitate the payment of all sums due Party of the Second Part.

"SAID PRITCHARD AND ABBOTT, further agree that in no way will the said Montgomery County be obligated to said Prtichard and Abbott, or their assistants, for salaries, expense, or material, except as above stated.

"WITNESS our hands in duplicate this the 8 day of January, A.D., 1945.

                                           COUNTY OF MONTGOMERY
                                           Party of the First Part

                                           By_____
                                                    County Judge

signed:                                 signed:
GUY STRIPLING                           FLOYD STEWART
Commissioner, Precinct #1               Commissioner, Precinct #2
Presiding Officer.


signed:                                 signed:
GUINN SANDERS                           H. C. FURLOW
Commissioner, Precinct #3               Commissioner, Precinct #4


ATTEST:

signed:
CORY A. BEARD
County Clerk, Montgomery
County, Texas

By-signed:
W. J. Graybill, Depty.                  PRITCHARD & ABBOTT
                                        Parties of the Second Part.

                                        By
                                        signed:
                                        J. H. Abbott"

          For the purpose of this opinion, our discussion shall
be confined to the validity of the contract submitted.  We shall
not go into the circumstances under which the commissioners'
court entered its order with reference to this contract, for in
this matter a fact determination is involved, about which some
controversy is indicated, and it is not the policy of this
department to determine questions of fact.

          In Opinion No. 0-5909, this department held that a
contract similar to the one submitted by you was valid.  Herein
we shall give further consideration to the matters involved in
a contract of this nature.

          Article 7206, Vernon's Annotated Civil Statutes,
provides:

          "Each commissioners court shall convene and sit as
          a board of equalization on the second Monday in May of
          each year, or as soon thereafter as practicable before the
          first day of June, to receive all the assessment lists or
          books of the assessors of their counties for inspection,
          correction or equalization and approval.

"1.  They shall cause the assessor to bring before them at such meeting all said assessment lists, books, ets., for inspection, and see that every person has rendered his property at a fair market value, and shall have power to send for persons, books and papers, swear and qualify persons, to ascertain the value of such property, and to lower or raise the value on the same.

"2.  They shall have power to correct errors in assessments.

"3.  They shall equalize improved lands in three classes, first-class to embrace the better quality of land and improvements, the second-class to embrace the second quality of lands and improvements, and the third-class to embrace lands of but small value or inferior improvements.  The unimproved lands shall embrace first, second and third class, and all other property made as nearly uniform as possible.

"4.  After they have inspected and equalized as nearly as possible, they shall approve  said lists of books and return same to the assessors for making up the general rolls, when said board shall meet again and approve the same if same be found correct.

"5.  Whenever said board shall find it their duty to raise the assessment of any person's property, they shall order the county clerk to give the person who rendered the same written notice that they desire to raise the value of same.  They shall cause the county clerk to give ten days written notice before their meeting by publication in some newspaper, but, if none is published in the county, then by posting a written or printed notice in each justice's precinct, one of which must be at the court house door.

"6.  The assessors of taxes shall furnish said board on the first Monday in May of each year, or as soon there-after as practicable, a certified list of names of all persons who either refuse to swear or to qualify or to have signed the oath required by law, together with the assessment of said person's property made by him through other information; and said board shall examine, equalize and correct assessments so made by the assessor, and when so revised, equalized and corrected, the same shall be approved.  Acts 1879, p. 44; Acts 1909, p. 373; G.L. vol. 8, p. 1344."

Article 7211, V. A. C. S., provides:

"Hereafter when any person, firm or corporation

renders his, their or its property in this State for
taxation to any tax assessor, and makes oath as to the
kind, character, quality and quantity of such property,
and the said officer accepting said rendition from such
person, firm or corporation of such property is satisfied
that it is correctly and properly valued according to the
reasonable cash market value of such property on the
market at the time of its rendition, he shall list the
same accordingly; but, if the assessor is satisfied that
the value is below the reasonable cash market value of
such property, he shall at once place on said rendition
opposite each piece of property so rendered an amount
equal to the reasonable cash market value of such property
at the time of its rendition, and if such property shall
be found to have no market value by such officer, then
at such sum as said officer shall deem the real or in-
trinsic value of the property; and if the person listing
such property or the owner thereof is not satisfied with
the value placed on the property by the assessor, he shall
so notify the assessor, and if desiring so to do make
oath before the assessor that the valuation so fixed by
said officer on said property is excessive; such officer
to furnish such rendition, together with his valuation
thereon and the oath of such person, firm or officer of
any corporation, if any such oath has been made, to the
commissioners' court of the county in which said rendi-
tion was made, which court shall hear evidence and
determine the true value of such property on January First,
19__ (here give year for which assessment is made) as is
herein provided; such officer or court shall take into
consideration what said property could have been sold for
any time within six months next before the first day of
January of the year for which the property is rendered.
Acts 1925, pp. 48 and 382, 39th Leg., ch. 20, § 2, and
ch. 167, § 2."

Article 7212, V.A.C.S., provides:

"The boards of equalization shall have power, and
it is made their official duty, to supervise the assess-
ment of their respective counties, and if satisfied that
the valuation of any property is not in accordance with
the laws of the State, to increase or diminish the same
and to affix a proper valuation thereto, as provided for
in the preceding article; and, when any assessor in this
State shall have furnished said court with the rendition
as provided for in the preceding article, it shall be the
duty of such court to call before it such persons as in
its judgment may know the market value or true value of
such property, as the case may be, by proper process, who
shall testify under oath the character, quality and
quantity of such property, as well as the value thereof.

Said court, after hearing the evidence, shall fix the value of such property in accordance with the evidence so introduced and as provided for in the preceding article; and their action in such case or cases shall be final. Id."

The foregoing provisions authorize the organization of the Commissioners' Court as a Board of Equalization and define the Board's powers and duties with reference to its consideration of the assessments brought before it by the Assessor and Collector of Taxes, the Board's hearing of evidence as to the value of property assessed for taxation, and, as to its authority, when satisfied that any property is not properly valued, to increase or diminish same and to fix a proper valuation for said property. Under said provisions, the Commissioners' Court, sitting as a Board of Equalization, is fully and expressly empowered to equalize and set a final value on all property reported to it by the Assessor and Collector of taxes. It is mandatory that the Court, sitting as a Board of Equalization, "call before it such persons as in its judgment may know the market value, or true value of such property" (Article 7212, formerly Article 7570, Rev. St. 1911). In the case of Brundrett v. Lucas, 194 S. W. 613 (writ refused), the Court in setting aside a valuation fixed by the Board of Equalization, said:

"The action of the board in disregarding the testimony introduced, which testimony was not disputed, nor impeached by documentary evidence, was arbitrary and directly in the face of a mandatory statute (formerly Art. 7570, Rev. St. 1911, now Art. 7212, V. A. C. S.) and furnished a sufficient basis for a suit in the district court to enjoin the collection of taxes upon the increased values thus made in the assessments.

". . . . We do no think the failure of the board to comply with the terms of a mandatory statute can be justified by showing that, if the same witnesses had been summoned and the same evidence introduced as upon the hearing in the district court, the order of the board would have been sustained by evidence. . . .." (Underscoring and parentheses ours)

Holdings to the same effect are found in Harlingen Independent School District v. Dunlap, 146 S.W. (2d) 235 (writ refused); City of Comanche v. Brightman, 88 S.W. (2d) 74; Netherland Independent School District v. Carter, 73 S. W. (2d) 935; and Ernest v. Standefer, 54 S.W. (2d) 229.

The Commissioners' Court has the implied authority to employ reasonable means to enable it to exercise the powers and discharge the duties imposed upon it by law. In numerous

instances, our courts have sustained contracts which involved expert and professional assistance to the Commissioners' Court in carrying out its statutory powers and duties (Cottle County v. McClintock & Robertson, Civ. App., 150 S. W. (2d) 134, error dismissed; Galveston County v. Gresham, 220 S.W. 560, writ refused; Hidalgo County Water Improvement District No. 2. v. Feick, Tex. Civ. App., 111 S.W. (2d) 742, writ dismissed; Cherokee County v. Odom, Tax Coll., 118 Tex. 288, 15 S. W. (2d) 538; Von Rosenburg v. Lovett, 173 S. W. 580; Roper v. Hall, 280 S. W. 298; and Federal Royalty Co. v. State , 42 S. W. (2d) 670.

In the case of Roper v. Hall, supra, the Court held, in effect, that the County Commissioners' Court has implied power to contract for the compilation of date for its use, while sitting as a Board of Equalization, in determining taxable value of oil and gas properties in the county. In this case the Court said:

"The general powers so given to the Commissioners Court are of little practical value, without the further authority to use adequate means to insure the proper, intelligent, and effective exercise thereof."

The holding in the foregoing case with reference to the authority of the Commissioners' Court to make such contracts under its implied power was followed in the case of Federal Royalty Co. v. State, supra.

In the case of Von Rosenburg v. Lovett, supra, the Court, in sustaining an implied power, used this very cogent language:

"When the law requires the performance of a duty by anyone it impliedly grants him the power to do the things reasonably necessary to discharge such duty. It would be a vain thing to impose upon anyone a duty, and deny him the means whereby he could perform such duty."

A reading of the instant contract reflects that its object is the compilation and furnishing of data for the use of the Commissioners' Court, while sitting as a Board of Equalization, in its determination of the taxable value of oil and gas properties in the county. The Contractor's function is to ascertain, compile and furnish data and information to the Board of Equalization pertaining to the appraisal and valuation of properties of the kind mentioned in the contract, for the purpose of assisting the court in effectively exercising its powers and performing its duties as a Board of Equalization. In view of its nature and purpose, such information or data would pertain to the character, quantity and

quality of the properties mentioned in the contract.

In view of the time fixed by law for the assessment and equalization of values for tax purposes, it might prove to be inexpedient and impracticable for the Commissioners' Court to wait until the Assessor and Collector of Taxes had returned the assessment lists to the Board of Equalization and then have such information or data prepared as to the appraisal and valuation of the properties shown on such lists. When the information and data as to the pertinent facts in determining the valuation of such property and for equalizing same, requires scientific knowledge, technical skill and assistance, such data could not be properly ascertained in so short a time. Such information as to each piece of property of the kind and character mentioned appears to be unrelated to the rendition or assessment of said property, but rather it is preparatory to valuation and equalization by the Board at such time as the Assessor and Collector submits the renditions and assessments for its consideration in equalizing and fixing a final valuation on such property.

The Commissioners' Court, sitting as a Board of Equalization, is authorized and it is charged by law with the duty of equalizing the values of all properties returned to it by the Assessor and Collector of taxes; and, in view of the authorities heretofore submitted, we think that is has the implied power and authority to prepare itself in advance to the end that it may properly and effectively perform the duties imposed upon it by law, in respect to the properties lawfully coming before it for consideration, provided that it does not exercise said powers in such a manner as to usurp or delegate the powers and duties imposed by law upon the Tax Assessor and Commissioners' Court.

Article 8, Section 14, Constitution of Texas, as amended, in part, provides:

"And such assessor and collector of taxes shall perform all the duties with respect to assessing property for the purpose of taxation and of collecting taxes, as may be prescribed by the Legislature."

By virtue of this constitutional authority, the Legislature may, in its discretion, by general law, impose additional powers, functions and duties upon the Assessor and Collector of Taxes (Harris County v. Hall, 172 S. W. (2d) 691.) The contract under consideration discloses no attempt to extend its obligations to usurp powers theretofore imposed upon either the Assessor and Collector of Taxes or the Commissioners' Court, sitting as a Board of Equalization. The obligation imposed on and assumed by the contractor to furnish data and information to said Board for the purpose of assisting

it in equalizing the values of properties of the kind mentioned constitutes no interference with the Assessor and Collector of Taxes in the due, proper and full performance of the powers, functions and duties committed to him by law, and constitutes no attempt to initially assess (without authority of law) properties not reported to the Board of Equalization by the Assessor and Collector of Taxes; nor does it evidence any attempt to evade or refuse to perform any of the duties imposed by law upon said Board.

Article 7335a, V. A. C. S., makes special provision with reference to contracts in connection with delinquent taxes, and said article sets the maximum compensation for such services and requires that such contracts shall be approved by the Comptroller and Attorney General. We do not think that the contract under consideration comes under the provisions of Article 7335a.

It was held in the case of White v. McGill, 114 S.W. (2d) 860, that the words "delinquent taxes" in Article 7335a are not used in a technical sense.

In a strict or technical sense, delinquency results from non-payment of taxes after the property has been validly assessed. In a broader sense, the owner of property may be delinquent in respect to payment when his property has not been assessed, and under the holding in White v. McGill, supra, "delinquent taxes", as used in Article 7335a, may result from failure to render or assess as well as from failure to pay after a valid assessment.

The instant contract discloses no obligation on the part of the contractor to secure information as to whether property is rendered or unrendered or would in any way be considered delinquent as of January 1, 1945. The obligation assumed is to collect facts as to the ownership and value of property of the kind mentioned in the contract as of January 1, 1945, and to report same with supporting data to this Board of Equalization for its use in connection with equalization and fixing proper values on any such property submitted to it for equalization for the year 1945.

We have carefully considered the cases of White v. McGill, supra; Sylvan Sanders Co. v. Scurry Co., 77 S. W. (2d) 709; Easterwood v. Henderson County, 62 S. W. (2d) 85; McQuart v. Harris County, 117 S. W. (2d) 494; Aldrich v. Dallas County, 167 S. W. (2d) 560, and the authorities cited in said cases in connection with the matters under consideration. Apparently the contracts involved in these cases were the same kind or type of contracts as the contract under consideration. The instant contract imposes no obligation to furnish any facts with reference to unrendered property, or

Honorable A. E. Hickerson - page 11, O-6380

with reference to the collection of any taxes. All of the
obligations assumed by the contractor will be performed
prior to the time any taxes become due and before the process
of collection of taxes can begin; therefore, we think that
the instant contract does not come within the purview of said
cases.

In view of the foregoing, it is our opinion that
the above quoted contract is valid, and that it is within the
scope of the authority of the Commissioners' Court to make and
execute such a contract.

The necessity of making and execution of such a
contract is a matter wholly within the discretion of the Com-
missioners' Court. Also, this department cannot pass upon the
amount of the consideration involved in said contract, for
that matter involves a fact determination which this department
is not authorized to make.

You are further advised that before any funds should
be paid out under said contract, such expenditures must have
been authorized in the county budget.

Trusting that the foregoing satisfactorily answers
your inquiries, we are

                              Yours very truly

                         ATTORNEY GENERAL OF TEXAS

                              s/ J. A. Ellis

                    By              J. A. Ellis
APPROVED FEB. 26, 1945                Assistant
s/ Carlos C. Ashley
FIRST ASSISTANT ATTORNEY GENERAL


Approved opinion committee By CFG, Chairman

JAE:ddt/cg