## THOMAS J. BARRY *vs.* SAMUEL J. CAPEN.

Suffolk.   November 15, 1889. — February 26, 1890.

Present: DEVENS, W. ALLEN, C ALLEN, HOLMES, & KNOWLTON, JJ.

*Attorney and Client — Contract for Professional Services — Public Policy.*

The retaining of counsel, avowed as such, for a definite sum, to appear before a board of street commissioners and argue the questions whether there is a public necessity for laying out a street, and what damages should be allowed those whose land is taken therefor, is legal.

In an action to recover for professional services, there was evidence that the plaintiff, a member of the bar as well as chairman of the city committee of a political party, agreed for a fixed sum with a landowner to appear before the board of street commissioners of the city to advocate the laying out of a street through his land, and to present his claim for damages ; and that the plaintiff, in addition to other services rendered by him, which were not open to question, went at least three times a week for several weeks to see the street commissioners before any public proceedings were begun for laying out the street. *Held,* that it could not be said, as matter of law, that there was no evidence of a legal contract.

HOLMES, J.   This is an action upon a special contract to pay the plaintiff, a member of the bar, one thousand dollars for professional services.   The case was tried by the judge below without a jury.   When the evidence was all in, the counsel for the defendant asked the judge to rule " that the contract of service and the services rendered were, in part, of such a character as were against public policy and illegal, and thereby vitiated the contract, and that the plaintiff could recover nothing."   The judge refused so to rule, and found for the plaintiff.   The question before us, therefore, is not what we should have found upon the evidence, but simply whether there was no evidence of a lawful contract, so that the court below should have ruled, as matter of law, that the agreement testified to was void.   A majority of the court are of opinion that the defendant was not entitled to require such a ruling, because there was some evidence of a contract consistent with public policy.

As the plaintiff recovered upon an express contract, and not upon a *quantum meruit*, it is not of the first importance to consider what he actually did.   That is evidence, no doubt, tending

to show what was the contemplated consideration of the defendant's promise, but it is not conclusive. The plaintiff may have rendered illegal services, and yet the defendant's promise may have been in consideration of the plaintiff's promising to perform, or performing, legal ones only. If the contract was legal, it would not be made illegal by misconduct on the part of the plaintiff in carrying it out. *Howden* v. *Simpson*, 10 Ad. & El. 793, 818, 819; *S. C.* 2 Per. & Dav. 714, 740; 9 Cl. & Fin. 61, 68. Barrett, J., in *Powers* v. *Skinner*, 34 Vt. 274, 284, 285. The judge having found that the contract was legal, the fact that the plaintiff did things against public policy, if it be a fact, can be considered only as bearing by way of illustration upon the question whether the tendency of the contract necessarily was to induce the doing of such things. If that was its necessary tendency to an appreciable degree, it was void, whether it induced the acts or not.

The plaintiff's statement of the contract is as follows. The defendant came to his office, and said that he had a case which he wished the plaintiff to attend to; that there had been appropriated twenty-five thousand dollars for Talbot Avenue, which went through the defendant's land; and that he wanted to have it laid out as soon as possible. The plaintiff asked what the defendant wanted him to do. The defendant answered, "I want you to appear before the street commissioners and advocate the laying of it out, and the terms of damages." He then stated what damages he thought he ought to get, and offered the plaintiff everything he got over ten thousand dollars. The plaintiff declined to do business in that way, whereupon the defendant said, "You go and get as much as you can, and I will pay you a thousand dollars for it." To this the plaintiff assented.

The judge was warranted in finding that a bilateral contract was made in this conversation; that the only services on the part of the plaintiff promised by him, or contemplated by either party at that time, were legitimate professional services, as the defendant's known counsel in advocating the laying out of a street by fair and open argument at meetings of the board to which the public had access, and, after the street was laid out, in presenting the defendant's claims for damages in the same way. The board of street commissioners had quasi judicial

duties to perform at both stages of the case. Public argument before it was proper on the question whether there was a public necessity for laying out the way, and on that of damages to be allowed those whose land was taken. The retaining, for a definite sum, of counsel avowed as such to conduct the argument was perfectly legal. *Fuller* v. *Dame*, 18 Pick. 472, 480. *Trist* v. *Child*, 21 Wall. 441, 450. *Marshall* v. *Baltimore & Ohio Railroad*, 16 How. 314, 335. *Lyon* v. *Mitchell*, 36 N. Y. 235, 241.

The plaintiff did not draw the petition in the case. He was not present at the hearing after the order of notice of intention to take the property. He did not do some other things which it might be supposed that one who really was engaged as counsel would do. On the other hand, from December to January, that is, before public proceedings were begun for laying out the street, he went at least three times a week to see the street commissioners. At this time he was chairman of the Democratic City Committee. We perceive the inferences which a jury or the judge in this case might have drawn from these facts, and we appreciate the argument addressed to us upon the evils of corruption, and the invalidity of contracts tending to induce it. But we cannot say that there was not some evidence of a legal contract. We cannot say, as matter of law, that the chairman of the committee of a political party cannot practise his profession — the law — in the City Hall, as well as in the courts. We cannot say that the contract appears, as matter of law, to have contemplated the use of improper influence, or to have necessarily tended to induce it. The words in which the contract is said to have been made did not disclose such a tendency on their face. The political position of the plaintiff, and what was done, are only evidence of what was expected, and are not conclusive that it was expected. What was done moreover was not necessarily improper, even in the particulars mentioned. We have not mentioned those services rendered which were not open to question.

*Exceptions overruled.*

*C. J. Noyes & E. B. Callender*, for the defendant.
*M. J. Creed*, for the plaintiff.