(57 App. Div. 426.)

## DUNHAM v. HASTINGS PAVEMENT CO.

(Supreme Court, Appellate Division, First Department.   January 25, 1901.)

1. CONTRACTS—VALIDITY—PUBLIC POLICY.
   A contract between a promoter and a pavement company whereby the former undertakes to secure the consent to introducing, extending, and securing the use of the pavement in a city, and to "use and make all reasonable, honest, and lawful efforts to secure the right from the city * * * to make bids for laying such pavement or paving blocks on the streets of the city," is not void on its face, as being against public policy.

2. SAME—PERFORMANCE.
   The mere performance of one of several illegal acts in the execution of a contract valid on its face does not vitiate it.

3. SAME—QUESTION FOR JURY.
   Though a contract is ambiguous, so that evidence of acts of the parties in its performance becomes competent, as tending to show the interpretation which they put upon it, and as furnishing a guide in the construction of it, the question whether the parties contemplated the performance of acts rendering the contract void, as against public policy, is for the jury.

Action by Edward R. Dunham against the Hastings Pavement Company.   On rehearing.   Motion for reargument denied.

For former opinion, see 67 N. Y. Supp. 632.

Argued before VAN BRUNT, P. J., and HATCH, PATTERSON, and INGRAHAM, JJ.

John S. Sheppard, Jr., for the motion.
Samuel Untermyer and Bernard M. Cone, opposed.

HATCH, J.   It is evident from the character of the brief submitted by the defendant upon this motion that its counsel is laboring under a sincere conviction that this court entirely misapprehended the facts in this case, and made misapplication of the rules of law applicable

thereto. The earnest insistence made in behalf of the defendant has induced us to make a careful re-examination of the questions involved, and after an attentive consideration of the brief, and of all the reasons which are assigned therein in favor of the motion, and after a re-examination of the original record in the court of appeals, upon which the decision of Chesebrough v. Conover, 140 N. Y. 382, 35 N. E. 633, was founded, we conclude that nothing was overlooked which vitally affects the conclusions at which we arrived in the decision rendered herein. While much was said by us, by way of argument and illustration, in the opinion which was delivered in deciding this case, nevertheless the decision itself was encompassed in very narrow bounds, and, when stated, will show that what is insisted upon as a misapprehension is in reality a quite radical disagreement as to the rules of law which we regard as controlling in the disposition of the case. We stated that it was conceded below that no taint of illegality appeared upon the face of the contract in question. It is now denied that it was so conceded. Assuming such to be the fact, it does not change the legal construction of the contract itself; and, whether conceded or not, in legal contemplation this contract, upon its face, is a valid contract, and binding upon the parties thereto. If the answer had admitted that the contract was performed, and no proof had been given of the character of the services rendered in its performance, the only question before the court would have been an assessment of the damages which the plaintiff became entitled to recover by reason of the breach. We therefore held that nothing which appeared upon the face of the contract precluded a right of recovery for a breach. Bearing this rule in mind, we further held that, if the proof of acts done by the party in the performance of the contract did not show that the contract itself was intended as a mere cover for the performance of illegal acts, it was entitled to be enforced; the real question being, did the parties, by the contract which they executed, contemplate and intend the doing by the plaintiff, in performance thereof, of acts which were in violation of the principles of public policy and therefore illegal? Upon this point we held that it was the intent of the parties in entering into the contract which became the real issue and the subject-matter of investigation. We said:

"It is not, however, the doing of the improper act which is the sole test. There must be the contract therefor, and intent that it shall be performed. Of course, the doing of the unlawful act is or may be the evidence of the intent, and characterize the contract, but it is not necessarily conclusive of it."

And further we said:

"If the contract contemplated legal service, and that alone, we do not think it would be rendered illegal by the fact that the plaintiff did illegal acts in its performance. The question is, was the contract in fact for the performance of illegal service? If it was not, then it is valid and can be enforced. * * * One of several illegal acts performed under it may not render the contract void. The question is, did the parties contemplate the performance of such acts by the contract which they made? The court will not stop to separate legal from illegal acts, in order to uphold the contract in part. If the contract contemplated one illegal act which the law condemns, it will vitiate the whole, even though it also contract for perfectly legal acts. But the characterization is to be made, based upon a consideration of all that was done."

It is at once apparent that the only disagreement which existed between this court and the court below was in the fact that that court assumed to say, as matter of law, that the acts done in the performance of the contract required it to hold that the parties contemplated, when they executed it, the performance of acts against public policy. This court said that a different inference might be drawn from such acts, or that, if some of them were illegal, their performance was not necessarily contemplated by the parties to the contract, and therefore it became a question of fact, to which the jury alone could properly make answer. Such rule of law we regard as being abundantly sanctioned by the decisions which we cited in the opinion which we handed down with the decision. We did not overlook the fact that the plaintiff and Morgan consulted with the aldermen in respect to the passage of resolutions authorizing the laying of the pavement. This evidence, as well as all other evidence in the case, was carefully considered, and became the subject of discussion in reaching our conclusions. It is quite evident to our minds that the mere performance of one or several illegal acts would not necessarily render this contract invalid. Mere misconduct in the performance of the contract does not have the effect of vitiating it. On the other hand, if the parties contemplated that illegal acts condemned by law were essential or necessary in its performance, the court would not stop to measure the gravity of the act, but would declare, as matter of law, that the contract was void. · The real question, therefore, which this court decided was that upon the record the inferences to be drawn from the testimony and the characterization of the contract were matters of fact, and for the jury to determine. Criticism is made that in ar riving at this conclusion we made misapplication of the rule of law announced in the Chesebrough Case. We do not so read ·that case. The court did not assume to say therein that illegal acts done in the performance of a contract would necessarily vitiate the same. On the contrary, it said that, if the parties contracted for the performance of illegal acts, it would be void. In other words, it is not necessarily the performance of the illegal act that vitiates the contract, but it is that the parties by their contract contemplated that such acts would be performed. That case clearly recognizes that such question is for the jury, as does, also, the case of Berry v. Capen, 151 Mass. 99, 23 N. E. 735, 6 L. R. A. 808.

Assuming, for the purpose of the discussion, that the contract in question is ambiguous, as urged by the defendant (which we do not concede), and so made evidence of the acts of the parties in its performance competent, as tending to show the interpretation which they put upon it, and as furnishing a guide in the construction of it, the result is the same. The question as to what the parties intended is still one of fact, and it was for the jury to say, under proper instruction from the court, whether or not the parties contracted for the performance of acts which render a contract unenforceable because against public policy. In discussing the facts as shown by the record in the Chesebrough Case, we were in error in stating that the plaintiff therein said to a member of assembly to whom he delivered the bill that he was directed to say that "if the bill passed he could

get what he wanted." This, it seems, was stated by the witness as coming from Conover, his employer, and was not said by him to the member of assembly. It remains a fact, however, that he saw two other members of the railroad committee, and conversed with them privately about the bill; and it also appears that he wrote letters, at the instance of Conover, respecting the signing of the bill by the governor. We were also in error in saying that Maloney's attendance was procured by the plaintiff. His attendance was procured by Conover, but the plaintiff talked with him privately in his office, and at Conover's office, respecting the form and character of the resolutions, upon four different occasions. What difference there could possibly be in the legal effect of the act, whether the plaintiff or Conover procured the attendance of Maloney, the clerk, is not readily apparent. But, assuming that we were wrong in the entire recital of the facts contained in that record, it does not in the slightest affect the legal question which we determined, and in respect of which we were under no misapprehension. As to that question we may have decided wrong, but, if so, it was not because we did not understand it. It is clearly evident from the discussion had in the Chesebrough Case, and by the charge to the jury therein, that the court would have sustained a verdict if it had been the other way; and they would have been clearly authorized to have characterized the contract and the acts of the plaintiff thereunder, as testified to by him, as illegal and void and against public policy. In that case the jury interpreted the acts differently, as they had the right to do. It is not necessary that we further discuss the question presented. It is clear that the disagreement between the defendant and this court does not arise from anything that we assumed or overlooked. We disagree as to the law. It is therefore apparent that no rules governing motions for reargument have application to this case.

The motion should therefore be denied. All concur.