NAT NATHANSON, Plaintiff, *v.* BROWN & WILLIAMSON TOBACCO CORPORATION et al., Defendants.

Supreme Court, Special Term, New York County, March 11, 1947.

*Archibald R. Palmer* for plaintiff.

*David Hartfield, Jr.,* for Brown & Williamson Tobacco Corporation, defendant.

SHIENTAG, J. Motion by plaintiff for an order dismissing the first, second, third, fourth, fifth and sixth defenses contained in the answer of the defendant Brown & Williamson Tobacco Corporation. According to the complaint, plaintiff spent many years in the Philippine Islands making business

acquaintances among the importers of merchandise from the United States. Among such business acquaintances were customers of the plaintiff for whom plaintiff purchased United States goods for shipment to the Philippine Islands. One of the customers was the defendant Araneta, a businessman living in Manila. Prior to 1945 plaintiff entered into negotiations with the defendant tobacco corporation for the purchase of cigarettes for shipment to the Philippine Islands. During the month of October, 1945, the defendant corporation requested that plaintiff introduce Araneta to said corporation to enable it to sell directly to Araneta. In consideration of this introduction, said corporation agreed to pay plaintiff 5% commissions " as long as said customer continued to purchase cigarettes from the defendant corporation, either through the plaintiff or directly from the defendant corporation." This 5% commission was to be included in the selling price of the cigarettes, with the knowledge and consent of Araneta. The defendant corporation further agreed not to sell its product to Araneta unless provision was made for the payment of commissions.

In pursuance of this agreement, which was communicated to Araneta, the introduction was made. This agreement continued from October, 1945, until January 9, 1946. On January 11, 1946, at the request of the corporation, plaintiff agreed to accept a flat commission of $1 per case of cigarettes. This was the only modification of the contract. Pursuant to the agreement, substantial amounts of cigarettes were sold to Araneta. Plaintiff received $20,000 from the defendant corporation under date of January 11, 1946. This is only a partial payment of commissions earned under the agreement. On information and belief, $100,000, the exact amount being unknown, was due for commissions. Prior to the commencement of the action plaintiff demanded an accounting from the defendant corporation of all merchandise sold and delivered, which was refused. Due performance of the contract and that plaintiff has no adequate remedy at law are then alleged.

For the second cause of action plaintiff alleges that while the agreement was in full force and effect, the plaintiff at the request of Araneta entered into negotiations with defendant corporation through its agents to obtain an agency for Araneta for the sale of defendant's products upon the distinct understanding and agreement that plaintiff would continue to receive as his commissions so long as the said agency con-

tinued or so long as the defendant Araneta continued to purchase the products of the defendant corporation, the sum of $1 per case. On January 15, 1946, the defendant corporation agreed with plaintiff that it, the defendant corporation, would enter into an agency agreement with Araneta, but in violation of the "fiduciary relationship" between plaintiff and defendant, defendant in February, 1946, entered into an agreement directly with Araneta agreeing to sell defendant corporation's product to Araneta and to make him an agent of its products in the Philippine Islands without providing for the payment of any commission to plaintiff. It is alleged that this agreement was made for the purpose of depriving plaintiff of his commissions. It is also alleged that large quantities of cigarettes were delivered under this agency agreement. When analyzed this cause of action is to be interpreted as claiming that in consideration of plaintiff's introduction of defendant to his client Araneta, defendant would enter into a contract with Araneta to sell Araneta cigarettes and that the contract would provide for a commission to plaintiff on each lot sold.

For a third cause of action it is alleged that defendants Wilson and Butler were employed by the defendant corporation; that the defendants, including Wilson and Butler, in February, 1946, conspired together and formed a deliberate plan and scheme to deprive plaintiff of any commission in connection with the sale of its product to Araneta; that the various acts done were all steps of the conspiracy to bring about this result; that as a result the agency agreement pleaded in the second cause of action was entered into; that it was agreed with Araneta to sell its product at a price less than the price paid by Araneta theretofore by omitting the commissions, and large quantities of cigarettes were sold to Araneta; that by reason of the conspiracy the plaintiff has been deprived of commissions on all merchandise.

The relief asks for an accounting and a decree that plaintiff is entitled to commissions upon all future sales of merchandise to Araneta and that they be paid.

The defendant corporation sets up six defenses. The first defense pleads that plaintiff is not the real party in interest. In essence the defense is that since the plaintiff originally dealt with the defendant corporation as an agent of New Era Enterprises, Inc., he must necessarily be suing in this action on behalf of that corporation. Essentially this question could

be raised by a general denial but since the meaning of the denial is set forth plainly in this defense, I see no reason for striking it out.

The second defense pleads that the alleged agreement or agreements sued upon by their terms were not to be performed within one year from the making thereof, and that neither said agreement nor agreements nor any note or memorandum thereof was ever made in writing and subscribed by the defendant or its lawful agent. The third defense pleads that the agreement or agreements were not to be performed before the end of a lifetime and that they were not in writing.

These two defenses thus plead the Statute of Frauds. The defendant in a detailed analysis of the cases on this subject states what it considers to be the rules for determining the availability of the .Statute of Frauds as a defense where an oral contract for an indefinite term is pleaded. The statement is as follows: " 1. If in an oral contract for an indefinite term a contingency upon which termination will result is expressly provided for, which said contingency could possibly occur within a period of a year, or if a provision for termination by a party or parties to the contract is contained within the contract, which provision permits termination by a party or parties to the contract within a year, or if the subject matter of the contract positively indicates that full performance was in the contemplation of the parties intended to take place within a year, then the contract is performable within a year and the Statute of Frauds is not a defense.

" 2. If an oral contract for an indefinite term does not contain in its express terms a contingency, the happening of which could cause termination of the contract within a year, or if the contract does not contain a provision which expressly allows the party or parties to the contract to terminate the contract, the operation of which termination provision can by exercise of such provision take place within a year, or if the subject matter of the contract positively indicates that performance of all its terms could by no possibility within the contemplation of the parties be performed within a year, then the contract cannot be said to be performable within a year and the contract is not enforceable by virtue of the Statute of Frauds. "

Under the first division our attention is invited to *National Broadcasting Co.* v. *Twentieth Century Sporting Club, Inc.* (29 N. Y. S. 2d 945), *Blake* v. *Voigt* (134 N. Y. 69), *Trustees of First Baptist Church* v. *Brooklyn Fire Ins. Co.* (19 N. Y. 305),

*Kent* v. *Kent* (62 N. Y. 560), *Warren Chemical & M. Co.* v. *Holbrook* (118 N. Y. 586), *Rochester Folding Box Co.* v. *Browne* (55 App. Div. 444, affd. 179 N. Y. 542) and *High* v. *Pritzker* (58 N. Y. S. 2d 706, affd. 269 App. Div. 1015).

The cases drawn to our attention under the second division are *Cohen* v. *Bartgis Bros. Co.* (264 App. Div. 260, affd. 289 N. Y. 846), *Elsfelder* v. *Cournand* (270 App. Div. 162) and *Hooke* v. *Petroleum Heat & Power Co.* (65 N. Y. S. 2d 115).

The decision in the case of *Cohen* v. *Bartgis Bros. Co. (supra)*, is determinative of the question of the Statute of Frauds. In that case an oral contract whereby defendant employed plaintiff as a salesman and agreed to pay commissions " upon all orders placed by " a certain corporation " at any time, whether or not plaintiff was in defendant's employ " at the time the orders were placed, was construed to be a contract not to be performed within one year and was held to be unenforcible. It was said in the opinion: " Unlike contracts which require the performance of a single act which may or may not be executed within a year, the contract here requires the defendant, for an unlimited period of time, to pay commissions on orders accepted from Resolute Paper Products Corp. and, therefore, is impossible of performance within a year." This decision of the Appellate Division, as noted above, was affirmed by the Court of Appeals. (See, also, *O'Brien* v. *O'Neil*, 271 App. Div. 647.)

The said defenses are insufficient against the second cause of action, which merely alleges, in effect, that the defendant agreed with plaintiff for a consideration that within a reasonable time it would enter into a contract with a third party, which contract would be favorable to plaintiff. There is no requirement that such a contract which is intended to be performed practically at once should be in writing.

The fourth defense alleges that the agreements, if any, were obtained by fraudulent means, namely, that the plaintiff paid at least $2,000 to an employee of the corporate defendant for the purpose of obtaining the agreement. The fifth defense says that $2,000 was paid to influence the action of defendant's employee in order to obtain from the defendant corporation an agreement with Araneta and the corporation which would include commissions for the plaintiff and that, therefore, the agreements, if made, were obtained pursuant to an unlawful, fraudulent and corrupt design and agreement. The sixth defense alleges that the contract was procured by means of bribery and the payment of $2,000.

Plaintiff claims that the six defenses pleaded are not applicable to his third cause of action. If this cause of action is on its face insufficient, the answers are proper in relation to it on the familiar principle that any answer is sufficient in opposition to an insufficient cause of action. Plaintiff pleads therein a conspiracy by employees of the defendant corporation to bring about certain corporate action, namely, the breach of plaintiff's agreement with the defendant corporation. Since a corporation can act only by its employees and since whatever they do in relation to corporate business is corporate and not individual action, the conspiracy charge fails. Any other rule would make it impossible for corporate business to be carried on at all except at the peril that every agent who advised concerning corporate action would be suable under some such allegations as are made in this complaint. The principle is well established and has been recently asserted in *Greyhound Corp.* v. *Commercial Casualty Ins. Co.* (259 App. Div. 317) and *Moskowitz* v. *Feuer* (265 App. Div. 884, affd. 291 N. Y. 568).

In the *Greyhound Corporation* case (*supra*), it was claimed that the agents of the defendant insurance company induced the company to repudiate its agreement with plaintiff by wrongfully, maliciously and falsely representing to it that a violation of law in the operation of a certain motor bus had come to their knowledge, and that the acts of the agents in making an adjustment had been taken in ignorance of facts showing noncoverage. There was no allegation that the agents profited in any way by reason of the alleged deceit upon the principal. The court held that except in such cases as involve individual and separate torts on the part of the agent such as an assault, trespass, fraud, conversion and so forth, the agent may not be held liable for inducing in the course of his employment the breach of a contract by his principal. There the court cited with approval *Said* v. *Butt* ([1920] 3 K. B. 497, 505–506) which stated: " I have searched in vain for any decision which indicates that a servant is liable in tort for procuring a breach of his master's contract with another. * * * But the servant who causes a breach of the master's contract with a third person seems to stand in a wholly different position. He is not a stranger. He is the alter ego of his master. His acts are in law the acts of his employer. In such a case it is the master himself, by his agent, breaking the contract he has made, and in my view an action against the agent under the *Lumley* v.

*Gye* \* \* \* principle must therefore fail, just as it would fail if brought against the master himself for wrongfully procuring the breach of his own contract. \* \* \* I hold that if a servant acting bona fide within the scope of his authority procures or causes the breach of a contract between his employer and a third person, he does not thereby become liable to an action of tort at the suit of the person whose contract has thereby been broken." McCARDIE, J., in that case, proceeded to state that this decision of course did not protect a servant who actually authorizes or takes part in the torts of assault, trespass to property, nuisance or was joint participant in any one of the recognized heads of tortious wrong. The phrase " acting bona fide within the scope of his authority " refers to the condition that the accused defendant must have taken steps which an employee can take, namely, give advice which is in the scope of his duty, whether it is given wrongfully, maliciously or falsely as was alleged in the *Greyhound Corporation* case.

In the third cause of action now being considered, it is alleged that the defendants Harry L. Wilson and Donald Butler were employed by the defendant corporation; that in February, 1946, the three defendants conspired to form a deliberate plan and scheme to deprive the plaintiff of any commission in connection with the delivery or sale of the product of the defendant corporation to the defendant Araneta. It is further alleged that the acts done by the defendants were all steps in this conspiracy and all defendants participated and did the acts for the common purpose. There are no allegations which indicate that what was done was not done bona fide as an employee of the defendant, and none of the other exceptions specified by McCARDIE, J., or O'MALLEY, J., arise in the case. This cause of action is therefore insufficient in law.

Since the third cause of action is insufficient, the fourth, fifth and sixth defenses relate to the first and second causes of action only and plead matters which might persuade the trier of the facts that the contracts, if made, were procured by fraudulent and illegal means. It is true that the details of the alleged collusion are not made very explicit, but further details may be procured by a bill of particulars.

Section 439 of the Penal Law makes it a crime to give gratuities without the knowledge of the principal or employer, with an intent to influence an employee's action. Plaintiff argues that this defense is insufficient because section 439 is limited

in its scope to cases where payments have been made to a purchasing agent, which payments increase the purchase price in some way. The statute, however, is not so limited in its terms. It refers to influencing improperly an employee's action " in relation to his principal's, employer's or master's business ". At least on this motion the defenses should stand as pleaded. It is the task of the trier of the facts to determine whether there has been a violation of the Penal Law.

The motion is granted to the extent of limiting the application of the second and third defenses to the first cause of action, and otherwise the motion is denied.