Hofstadter, J.
The plaintiff moves to strike for insufficiency three affirmative defenses and the first counterclaim; he moves additionally to strike this counterclaim on the ground that it is barred by the applicable Statute of Limitations. Finally he moves to strike the answer and for summary judgment in his favor.
The action is for an accounting under a written letter agreement dated November 20, 1946, annexed to the complaint, by which the defendant undertook to compensate the plaintiff if he *752 succeeded in negotiating a contract between Universal Pictures Co., Inc., and the defendant, for the acquisition by the latter of the distribution rights in forty western and four serial motion pictures. The plaintiff was to receive $10,000 on the execution of the contract between Universal and the defendant, and a further commission of 20% of the gross receipts derived from the defendant’s distribution of the pictures, after it had recouped $100,000 from a stated percentage of the gross receipts; this 20% share was to be paid to the plaintiff simultaneously with any further payments the defendant would be obliged to make to Universal. The complaint alleges due performance by the plaintiff and the execution of a contract on December 23, 1946, between the defendant and United World Films, Inc., an affiliate of Universal, for the defendant’s distribution of the pictures. The plaintiff received $10,000 from the defendant in December, 1946, but, despite demand, the defendant has refused to make any additional payments or to give the plaintiff an accounting.
The first defense alleges in substance that the plaintiff negotiated the Universal contract with an agent of Universal and United World Films, Inc., and that, to influence this agent to cause United to execute the contract with the defendant, he agreed to pay and did pay this agent $10,000, and that the contract between United and the defendant was made pursuant to the corrupt and criminal agreement of the plaintiff to pay the $10,000. The defense concludes with the statement that the contract on which the plaintiff sues should not be enforced, since the plaintiff’s claim to compensation thereunder is illegal and void, under section 439 of the Penal Law. The second defense, after repeating the factual allegations of the first defense, asserts that the contract should not be enforced because the plaintiff’s claim is contrary to public policy.
The first counterclaim seeks recovery of the $10,000 paid to the plaintiff on the execution of the contract with United. In addition to factual allegations similar to those in the defenses referred to, it states that the plaintiff fraudulently represented that he had negotiated the contract with Universal and United and was entitled to receive $10,000 solely as compensation for his services and that the defendant paid the $10,000 in reliance on these representations, when in fact the plaintiff had agreed to pay $10,000 to the agent mentioned to influence him to cause United, Universal’s affiliate, to execute the distribution agreement with the defendant, that the distribution agreement is the result of a corrupt and criminal agreement and was made by reason of the plaintiff’s agreement to pay the agent $10,000, and that the defendant has thereby been damaged $10,000.
*753 It is obvious that, but for the allegations of fraud in the counterclaim, the effect of which will be treated later, the first two defenses and the counterclaim present basically the same question: does the plaintiff’s alleged corrupt arrangement with the agent of Universal and its affiliate, United, deprive him of his right to recover the compensation the defendant agreed to pay him for his services in bringing about the distribution agreement with United?
The written agreement annexed to the complaint is on its face completely lawful. It commits the defendant to the payment of stated commissions for services in negotiating a distribution contract. It concludes with the provision that if the defendant does not secure the pictures from Universal, it is to be under no obligation to the plaintiff, regardless of the service he may have rendered in the transaction. There is no suggestion that the plaintiff was to do anything other than perform legitimate services. It is clearly not the defendant’s contention that it intended or contemplated that the plaintiff should procure the distribution contract by improper or corrupt means. The very contrary is the ease. The assertion in the counterclaim that the defendant was the victim of fraud when it paid the plaintiff the $10,000, necessarily repels any thought that it was a party to an illegal contract. Moreover, neither in the defenses nor in the counterclaim does the defendant take the position that the agreement sued on is itself unlawful. All it says is that the plaintiff, by his manner of performing the agreement, has forfeited his right to compensation thereunder.
The narrow question for decision is then whether the unlawful acts imputed to the plaintiff in performance are fatal to recovery under a lawful contract. Cases in which both parties knowingly contract for the rendition of unlawful or improper services, such as lobbying, are not analogous. Examples of such cases are Oscanyan v. Arms Co. (103 U. S. 261); Stone v. Freeman (298 N. Y. 268), and Mahoney v. Lincoln Brick Co. (304 Mich. 694). Nor is the situation here like that in Nathanson v. Brown & Williamson Tobacco Corp. (189 Misc. 1024), where the defense was that the plaintiff had bribed one of the defendant’s employees. Here the defendant charges that the plaintiff bribed not its but Universal’s and United’s agent. Incidentally, it may be observed that neither the answer nor the affidavit in opposition intimates that Universal or United has disaffirmed or questioned the distribution contract or that the defendant has suffered the slightest interference with its full enjoyment of the fruits of the contract.
*754 The case differs, too, from Reiner v. North Amer. Newspaper Alliance (259 N. Y. 250) in which the plaintiff could furnish the consideration for which the defendant agreed to pay him only by violating duties assumed before he contracted with the defendant. Though the defendant did not know that the plaintiff entered into the contract in defiance of his prior commitments, nevertheless there was no escape from the fact that the plaintiff could not perform without breaking his other obligations. There was no lawful way of performing. In this case, however, the services to be performed did not necessarily entail any unlawful or improper conduct on the plaintiff’s part.
Whatever view might be taken were the question an original one, it is foreclosed by authority. The court is persuaded from its own research that the rule has been adopted in this State that recovery for services under a valid agreement may be had, notwithstanding that the plaintiff has in the course of their rendition committed illegal acts (Russell v. Burton, 66 Barb. 539; Chesebrough v. Conover, 140 N. Y. 382; Dunham v. Hastings Pavement Co., 56 App. Div. 244, motion for reargument denied, 57 App. Div. 426). “ The question is and continues, was the contract in fact for the performance of illegal service. If it was not, then it is valid and can be enforced ” (Dunham v. Hastings Pavement Co., 56 App. Div. 244, 251-252, supra). The court wrote a second opinion in the Dunham case on the defendant’s application for reargument in which, adhering to its position, it said: ‘‘ Mere misconduct in the performance of the contract does not have the effect of vitiating it ” (57 App. Div. 426, 428).
The same view was expressed tersely by Justice Holmes many years ago in Barry v. Capen (151 Mass. 99): “If the contract was legal, it would not be made illegal by misconduct on the part of the plaintiff in carrying it out ” (p. 100), a statement quoted with approval in the second opinion in Dunham v. Hastings Pavement Co. (supra). Courts in other States have reached a like result (Hollister v. Ulvi, 199 Minn. 269; Traver v. Naylor, 126 Ore. 193; Hogston v. Bell, 185 Ind. 536; Josephs v. Briant, 108 Ark. 171).
It is true that the contrary view is also held (6 Williston on Contracts [Rev. ed.], p. 5000, § 1761; Tocci v. Lembo, 325 Mass. 707). In support of the latter position it may well be urged that there is an incongruity in permitting recovery for services which in themselves or in the manner of their rendition are in whole or in part contrary to law or public policy. However, every offender against section 439 of the Penal Law does not incur the penalty of losing his contract rights. This is illustrated by Merchants’ Line v. Baltimore & Ohio R. R. Co. (222 N. Y. 344) *755 in which the plaintiff was allowed to recover on a contract, although it had agreed to pay one of the defendant’s employees a percentage of the moneys it was to receive. The court held that since the particular employee had nothing to do with the making of the contract, it was not tainted by the plaintiff’s misconduct. It must be recognized that whenever a defendant avoids contract liability because of illegality, the public, rather than the defendant’s interest leads to the decision. The determination whether in a particular case this public interest shall prevail over all other considerations, requires a striking of a balancé between conflicting factors. In New York authority has declared that in cases such as this a valid contract is not vitiated by misconduct in its performance. It follows that the first and second defenses are insufficient and are stricken.
If the plaintiff is entitled to recover the balance of his compensation, he may equally retain the $10,000 already paid, except for the assertion in the first counterclaim that the payment was procured by fraud. It will be assumed in the defendant’s favor, without discussion, that if the payment was made in reliance on fraudulent representations, the plaintiff is obliged to return it, that the claim for restoration rests on fraud, not contract, that the six-year period of limitation does not begin to run until discovery of the fraud and that the first counterclaim for fraud is well pleaded. On this assumption, the motion to strike the first counterclaim as insufficient and as barred by the Statute of Limitations is denied. Despite the foregoing, this counterclaim must be brushed aside, because the plaintiff’s motion for summary judgment challenges its basis in fact. The defendant presents not a vestige of proof in support of its claim that it paid the $10,000 in reliance on fraudulent representations. Analysis of the papers demonstrates convincingly that the first counterclaim, though pleaded as one for fraud, is in reality merely a reassertion of the defendant’s underlying position that the plaintiff’s alleged corruption of Universal’s agent forfeits his right to compensation. The counterclaim to compel restitution of the compensation already paid is a corollary of that position. This position having been held untenable, the counterclaim cannot withstand the motion for summary judgment.
The defendant’s subsidiary contention that there is an ambiguity in the agreement sued on concerning the percentage of gross receipts out of which it is to recoup the $100,000 before the plaintiff may share in them, at most goes to the amount, if any, which may be found due to the plaintiff. It does not affect his right to an accounting and the ambiguity, if it is such, may appropriately be resolved on the accounting. The same observa *756 tion applies to the third defense of the Statute of Limitations. Obviously the period of limitation does not run from the date of the agreement, but from that on which the cause of action arose. The defendant has not shown that the plaintiff’s right to an accounting is barred. The defense of the Statute of Limitations may, however, remain so that it may be available to the defendant on the accounting with respect to any moneys which may be found to have become due and payable more than six years before the commencement of the action. The motion to strike the third defense is accordingly denied.
Since the first and second defenses are insufficient in law it is unnecessary to consider whether the defendant shows a triable issue with respect to them. The defendant makes no effective denial of the allegations on which the plaintiff’s right to an accounting depends. Nor does the defendant otherwise meet or overcome them. The plaintiff’s right to an accounting is, therefore, established.
The plaintiff’s motion for summary judgment on his cause of action is granted and an accounting will be had before a referee to be designated in the order hereon. The action is severed as to the defendant’s counterclaim for $350 on a promissory note. Settle order.