# Bush *v.* Russell.

*Assumpsit.*

(Decided February 6, 1913. 61 South. 373.)

1. *Appeal and Error; Review; Non-Suit.*—The necessity contemplated under the provisions of section 3017, Code 1907, is shown when it is made to appear that plaintiff became satisfied from the adverse rulings of the court that he could not recover, and therefore took an involuntary non-suit to avoid judgment against him.

2. *Same; Harmless Error; Pleading.*—Where the general issue is formally pleaded with special pleas in confessions and avoidance, the rulings in sustaining demurrers to special pleas, preserved for review by suffering a non-suit under section 3017, Code 1907, is not error without injury.

[Bush v. Russell.]

3. *Same; Review; Matters Shown by Bill of Exceptions.*—In the absence of a bill of exceptions a ruling on a motion to strike a plea cannot be reviewed.

4. *Same; Matters Not Presented Below.*—Whether a plea is bad in a certain aspect will not be determined on appeal where the question was not raised below nor argued on appeal.

5. *Brokers; Contract; Validity.*—Making the compensation contingent on the success of the undertaking will not condemn a contract to procure a purchase of a post office site by the government.

6. *Contracts; Influencing Official Acts; Validity.*—A plea as an answer to a suit on a contract for compensation in assisting to sell a post office site, which merely alleges that part of the consideration was a promise to influence Federal officials in selecting the property, shows a contract valid on its face.

7. *Same.*—Agreements to procure favors from public officials in the discharge of public duties by personal solicitation or influence as considerations to be addressed to them over and above the merits of the actions sought, or by any secret or devious approaches, are without the pale of remedial law, since they tend to introduce inefficiency and corruption into the administration of the government.

8. *Same; Public Policy.*—Courts are closed against contracts inherently bad, as where they waive duties imposed by law or invade the rights of others; but not all contracts looking to an effect on the administration of government affairs are to be condemned, since individuals have a right to be heard as to them, particularly so when their private interests are involved.

9. *Same; Performance Affecting Validity.*—A contract valid in its inception is not rendered illegal by what a party does in performing it.

10. *Same; Consideration; Jury Question.*—What is done in performing a contract for service is competent evidence to show the contemplated consideration for the promise of a party to pay therefor, but it is not conclusive, and it is for the jury or the court trying the case to draw the proper inferences from the evidence.

APPEAL from Mobile City Court.

Heard before Hon. SAMUEL B. BROWNE.

Assumpsit by Albert P. Bush against Julia F. Russell. Judgment for defendant, and plaintiff appeals. Reversed and remanded.

The substance of the contract sufficiently appears from the opinion. Plea 5 is as follows: "Defendant says that the only consideration for the promise which is sued upon was a promise on the part of the plaintiff to influence the officials of the United States government in the selection of the property in question by the

United States government for post office purposes."
The plea was afterwards amended by striking out the
words "the only" before the word "consideration," and
inserting in lieu thereof the words "a part of the." The
demurrers raise the question discussed in the opinion.

STEVENS, LYONS & DEAN, for appellant. The court
should have sustained demurrers to plea 5.—*Toole Co.
v. Norris*, 2 Wall. 45; *Oscanyan v. W. R. Arms Co.*,
103 U. S. 261; *Burke v. Child*, 88 U. S. 441; 36 N. Y.
240; 51 N. Y. 179; 34 N. W. 532; 65 S. W. 442; 80
S. W. 803; 33 L. R. A. 166; 57 Pac. 785; 80 Am. Dec.
77. The court should exercise extreme caution in strik-
ing down contracts because offensive to public policy.
—9 Eng. Com. Law 557; 26 Ia. 191; 35 Ala. 586. Plea
A was likewise subject to demurrer.—*Tobler v. Pioneer
M. & M. Co.*, 166 Ala. 518; *Tobler v. Sheffield Co.*, 87
Ala. 306; *Smoot v. M. & M. R. R. Co.*, 67 Ala. 14; 23
N. E. 735.

GREGORY L. & H. T. SMITH, for appellee. The rule
is well settled that when a plaintiff takes a non suit
without introducing any evidence in support of his com-
plaint to which the general issue has been pleaded, any
error in the ruling on his special pleas are without
injury.—*Brown v. Com. F. I. Co.*, 88 Ala. 189; *Zirkle
et al. v. Jones*, 129 Ala. 444; *Andrews v. Hall*, 132 Ala.
320; *Setzer v. Mertz*, 156 Ala. 667. There is nothing in
section 3017, Code 1907, to the contrary. However,
there is no error in the rulings complained of, as the
pleas were not subject to the demurrers interposed.—
*Toole Co. v. Norris*, 2 Wall. 45; *Spottswood v. Bently*,
130 Ala. 313; *Hazelton v. Heckles*, 202 U. S. 78; 174
U. S. 647; 40 N. Y. 546; 6 Dana 366; 75 Wis. 224; 62
Ill. App. 221; 24 Atl. 219. Motions to strike pleas are

not reviewable unless the motion and the ruling there-on is presented by bill of exceptions.—*Mouton v. L. & N.*, 128 Ala. 537. In any event, plea A was good and not subject to motion to strike.—*Wefel v. Stillman*, 151 Ala. 249, and authorities cited supra.

SAYRE, J.—Appellant sued appellee upon her written agreement to pay him a fixed sum for services to be rendered in assisting defendant in her efforts to sell to the government of the United States a certain parcel of land in the city of Mobile. Plaintiff agreed "to use all reasonable diligence on his part to assist the said party of the first part (defendant) in the sale of the said property to the United States." He further agreed "to go to Washington, D. C., as many times as he may (might) deem necessary in his efforts to effect the sale by the said party of the first part to the United States." The contract, which is set out in hæc verba in the third count of the complaint, contains no further definition of plaintiff's duties. Payment of the agreed sum was conditioned upon the sale being consummated, which condition, it is averred, has been performed. Defendant pleaded the general issue and several special pleas in confession and avoidance. Demurrers to the special pleas were overruled, whereupon plaintiff took a non-suit, reserving, as the record shows, the right to have the several rulings reviewed on appeal as contemplated and provided by section 3017 of the Code.

It seems convenient in the first place to consider appellee's contention that, if there was error, it was, in view of the presence of the general issue, which was formally pleaded, error without injury. This on the authority of *Setzer v. Mertz*, 156 Ala. 667, 47 South. 1039, and the cases there cited. Appellant's procedure for a review has been controlled by his understanding

of the meaning and effect of section 3017 of the Code, which reads as follows: "If, from any ruling or decision of the court on the trial of a cause, either upon pleadings, admission or rejection of evidence, or upon charges to the jury, it may become necessary for the plaintiff to suffer a nonsuit, the facts, point, ruling or decision may be reserved for the decision of the Supreme Court by bill of exceptions or by appeal on the record as in other cases." Prior to the amendment of February 2, 1903 (Acts, p. 34), and subsequent to the Revised Code of 1867, only such rulings as were properly shown by a bill of exceptions could be reserved for review in case of a nonsuit, and the necessity contemplated was shown when it was made to appear that the plaintiff became satisfied by reason of the adverse ruling that he could not recover, and therefore took a nonsuit, not voluntarily, but in order to avoid a verdict against him. So it is now.—*Duncan v. Hargrove,* 22 Ala. 150; *Engle v. Patterson,* 167 Ala. 117, 52 South. 397. No doubt there may be cases in which the ruling reserved for review by nonsuit will appear to be error without injury. But this is not one of them. The plaintiff may have been able to make out the case alleged in his complaint, but wholly unable to meet the alleged matter of avoidance. It was therefore necessary within the meaning of the statute for him to have a correction of the erroneous ruling touching the legal sufficiency of the alleged matter of avoidance. With the exception of *Setzer v. Mertz, supra,* the cases cited by appellant on this point were cases in which the plaintiff, by refusing to plead over, suffered judgment without adducing proof of his complaint, and without resorting to the statutory method of review by nonsuit; indeed, they were decided during an interval of the statutory history in which there was no provision for

a review by nonsuit of rulings on the pleadings. The memorandum decision in *Setzer v. Mertz* is probably to be accounted for by the fact that the original judgment of nonsuit failed to show that plaintiff refused to plead over in order that he might have a review of the pleadings by nonsuit. For aught appearing in the judgment entry, by which alone rulings on questions of pleading were to be shown, the nonsuit was, as far as affected by such rulings, voluntary. Later on this defect in the judgment was corrected after a fashion, but the facts as to the nonsuit were not stated in any judgment entry. There was a motion for correction, and an order that "the motion is granted." Unless the rulings be thus accounted for, the statute is emasculated, and we decline to follow the case further .

Plea 5, the ruling in support of which is now urged for error, was that a part of the consideration for the promise sued upon was a promise on the part of plaintiff to influence the officials of the United States government in the selection of the property in question for post office purposes. The sufficiency of the plea was sustained on the theory that all contracts of employment to influence officers of government are vicious in tendency and void as opposed to public policy. As against the special count, where the contract is set out, argument for the plea dwells upon the fact that the compensation there shown to have been bargained for was contingent upon the success of plaintiff's efforts to procure a sale to the government. But in the consideration of the plea as an answer to the common counts that fact does not appear. We are not disposed to attach controlling importance to the presence or absence of this fact, for the reason that, while the fact that his compensation is contingent will naturally stimulate the efforts of a broker or other agent and so hold

out inducement to the use of improper means, and such contracts ought therefore perhaps to be subjected to the more careful scrutiny, yet the temptation to wrong in such cases is not different in kind from the seduction of self-interest which inheres in all business transactions, and, if the parties in truth contemplate no impropriety and the contract is irreproachable in other respects, our judgment is that it cannot be condemned because there is a stipulation for a contingent compensation. The contract is good or bad without regard to that circumstance.—*Stanton v. Embry*, 93 U. S. 548, 23 L. Ed. 983.

On the face of the contract shown in the special count, there appears no intimation of a resort to improper practices. However, the judgment below was not induced by the consideration that the service stipulated for in the particular case was understood to be vicious or immoral, but by the argument, as we may infer, that the contract by nature belonged to a class which the law, in unswerving pursuit of a settled policy, will not enforce nor tolerate because they tend generally to improper practices, and irrespective of the question whether improper means are actually contemplated or used in their execution. The courts are closed against some contracts because they are inherently bad, as where they amount to a waiver of duties imposed by law, or an invasion of the rights of others, or a disturbance of the public peace, order, or morality. But not all contracts looking to an effect upon the administration of the affairs of government are to be condemned, for individuals have a right to be heard as to them—peculiarly so when their private interests are involved. In respect to interferences with the discharge of the functions of government this court in *Spottswood v. Bentley*, 130 Ala. 310, 30 South. 493, quoted the lan-

guage of the Supreme Court of the United States in *Tool Co. v. Norris,* 2 Wall. 45, 17 L. Ed. 868, as follows: "All agreements for pecuniary considerations to control the business operations of the government, or the regular administration of justice, or the appointments to public offices, or the ordinary course of legislation, are void as against public policy." It may be noted that this quotation of broad statement added nothing to the authority of either case, for the contract in judgment in our case was essentially and flagrantly fraudulent in conception and in execution, and furnished no just occasion for mounting the "unruly horse" of mere policy. The *Tool Company Case* has been approvingly quoted by the Supreme Court of the United States in later cases. *McMullen v. Hoffman,* 174 U. S. 647, 19 Sup. Ct. 839, 43 L. Ed. 1117; *Hazelton v. Sheckels,* 202 U. S. 78, 26 Sup. Ct. 567, 50 L. Ed. 939, 6 Ann. Cas. 217; and by other courts. But that court has also indicated that it cannot have the sweeping application in the destruction of contracts contended for by appellee. In *Trist v. Child,* 21 Wall. 441, 22 L. Ed. 623, the plaintiff sought to enforce a contract for compensation for lobby service in procuring the passage of a bill for the payment of a private claim against the government. The agreement was condemned unequivocally; but the court said: "We entertain no doubt that in such cases, as under all other circumstances, an agreement express or implied for purely professional services is valid. Within this category are included drafting the petition to set forth the claim, attending to the taking of testimony, collecting facts, preparing arguments, and submitting them orally or in writing to a committee or other proper authority, and other services of like character. All these things are intended to reach only the reason of those sought to be influenced. They rest on the same principle of

ethics as professional services rendered in a court of justice, and are no more exceptional. But such services are separable by a broad line of demarcation from personal solicitation, and the other means and appliances which the correspondence shows were resorted to in this case." And in *Oscanyan v. Arms Co.,* 103 U. S. 261, 26 L. Ed. 539, the court said: "So, too, with reference to furnishing the government with arms or supplies of any kind. It is legitimate to lay before the officers authorized to contract all such information as may apprise them of the character and value of the articles offered, and enable them to act for the best interest of the country. And for such services compensation may be had as for similar services with private citizens." The language of the *Tool Case* has been criticised.—*Lyon v. Mitchell,* 36 N. Y. 235, 93 Am. Dec. 502. In *Houlton v. Nichol,* 93 Wis. 393, 67 N. W. 715, 33 L. R. A. 166, 57 Am. St. Rep. 928, the *Tool Company Case* is construed, properly as we think, as condemning only "agreements to do acts in themselves contrary to public policy, or agreements the performance of which, by necessary inference, require or contemplate the resort to methods having a corrupting tendency." Our additional observation of the case, and the others to which appellee refers, cases in which the contracts were put into the category of the condemned, is that they were decided upon their own facts, and seem to have proceeded upon the assumption that the improper things done in the execution of the contracts involved fairly evidenced what the parties contemplated should be done, and such, for aught appearing to the contrary, was the fact.

We intend no disparagement whatever of the salutary rule which is established by the authorities, that agreements for the procurement of favors from public

officials in the discharge of public duties by personal solicitation or influence as considerations to be address· ed to them over and above the merits of the action sought, or by any secret or devious approaches, are without the pale of remedial law because they tend to introduce inefficiency and corruption into the adminis- tration of government. On the facts as they appear on the face of the pleadings, this case does not fairly fall within the condemnation of the rule. The government, it may be presumed, was in the market for the purchase of a post office site. Defendant desired to sell her prop- erty. The right to dispose of property is an essential element of ownership. That right and the freedom of contract in general the law protects also. She was at liberty to employ an agent to do for her what she might lawfully do for herself—to employ that agent who, by his zeal, activity, acquaintance, or good character, might be most likely to effect the sale and obtain the best price.—*Lyon v. Mitchell, supra.* On the face of the contract there is no appearance of secrecy or decep- tion to be practiced, no fraud or corruption contem- plated—nothing to justify a judicial declaration that it is against fair dealing, good morals, or public policy. *Bergen v. Frisble,* 125 Cal. 168, 57 Pac. 784. This court has heretofore upheld a contract in which the agent undertook for a reward in large part contingent to proceed to Washington and do all in his power to pro- cure the passage of an act of Congress to confirm a private title.—*Hunt v. Test,* 8 Ala. 713, 42 Am. Dec. 659. On that precedent and the considerations hereto- fore stated, we hold the contract here shown to be valid on its face.

It may be made to appear in proof that, notwithstand- ing the fair form of the contract, the parties intended or contemplated that some additional element of im-

proper personal solicitation, secret and discreditable influence, or other unlawful means, should be used in effecting a sale of defendant's property. If so, the jury will, on issues properly framed, declare the contract to be void and unenforceable.

Did plea 5 add anything to the case? Did it raise an issue against the complainant? We think not. It says only that plaintiff agreed to influence the officials of the government. Defendant could hardly have employed the services of plaintiff for any other purpose. But influence may be good and lawful, or it may be sinister and unlawful. If by the plea defendant meant only that influence which was stipulated for on the face of the contract alleged in the special count, the contention that the contract in that shape was void, presented by demurrer to the count, would have been overruled. If the intention was to show that the contract, by reason of unexpressed consideration, was obnoxious to public policy, it should have made the issue, as against the special count at least, by some brief but appropriate averment, as was perhaps well done in pleas 2, 3, and 4. To "lobby" with department officials for a contract, as alleged in those pleas, does not necessarily imply corruption, but it carries nevertheless a certain commonly understood suggestion of sinister purposes. It does imply a form of personal solicitation which tends to corruption, and is for that reason forbidden. But "influence" is a much broader term. Standing alone, its moral and ethical implications are indifferent. They may be good or bad. The methods of influence may be legitimate or illegitimate. To say, then, that plaintiff promised "to influence" the officers of the government, without more, meant nothing. An intention to violate law or morals is not to be presumed. And averments of fact, when their legal sufficiency

is questioned, are construed most strongly against the pleader. The demurrer to the fifth plea, so construed, should have been sustained.

The ruling on the motion to strike plea A cannot be reviewed in the absence of a bill of exceptions.

The parties in their briefs have treated plea A as asserting, with elaboration, the same principle as plea 5, with which we have heretofore dealt. If the plea had been designed to set up the proposition that plaintiff could not recover by reason of the character of his efforts to execute the contract, though the contract in its inception was without taint of offense against public policy, another question would be raised. We are inclined to think that the plea was bad even in that aspect, but, as that question was not raised in the court below nor has been argued here, we leave it without conclusive answer. We think it well to add that if the plea was intended to assert that the contract into which the parties entered, though valid in its inception, was shown to be illegal by what plaintiff subsequently did in and about its execution, the proposition is unsound. What was done in the performance of the contract would, according to the authorities, be competent evidence to show what was the contemplated consideration of the defendant's promise, but it is not conclusive. It would be for the jury, or the court if required to try the facts, to draw the proper inference as to that on hearing the evidence. If the minds of the parties met upon the terms of a valid contract, a contract which, so far as the parties intended or contemplated, was to be carried out by proper and lawful means, it would not necessarily be rendered illegal by the fact that in carrying it out the plaintiff resorted to methods of influence which the law in general reprobates.—*Barry*

*v. Capen,* 151 Mass. 99, 23 N. E. 735, 6 L. R. A. 808; *Howden v. Simpson,* 10 Ad. & El. 793, 818.

Our opinion is that the judgment should be reversed. Reversed and remanded. All the Justices concur.