The complaint sought damages for the breach of a contract to pay a real estate sales commission. Among other defenses not here pertinent, in his answer the defendant (Nash) pled a lack of consideration for the agreement. After a non-jury trial, a final judgment was rendered in favor of the plaintiff (Vann) for $2,000. The defendant's motion for a new trial, which was overruled by the court, contained one ground, that the court erred in finding that the consideration was sufficient to support the contract. The defendant appeals, raising as the only issue the same matter as was contained in his new trial motion.
Because of the familiar presumption favoring the trial court's findings, we will briefly state only portions of the evidence tending to uphold the judgment.
Mr. Vann has been a real estate broker since 1969, operating as Bob Vann Agency. A warehouse had become available for purchase from a bank, and Mr. Vann re-contacted his nephew, Mr. Nash, to ascertain if Mr. Nash was interested in joining him as a partner in purchasing the property, and he received an affirmative reply, but was asked what they would do with it. Mr. Vann stated that they could lease it, or he could place it with Bob Vann Agency and sell it.
On June 22, 1976 the bank and the partnership entered into a written sales contract regarding the purchase of the property; however the transaction was not closed until the bank executed a deed to them on August 20, 1976. The two partners contributed equal sums of money towards the purchase price of the property and executed a mortgage to the bank for a balance due thereon.
The warehouse was placed for sale with Bob Vann Agency, who listed it with Multiple Listing Service. Mr. Brooks, another real estate broker, was contacted by Mr. Vann as to selling the warehouse. Hall's Huntsville Wholesale Florists (Hall's) inquired of Mr. Brooks about warehouse property, and, since he was ill, Mr. Brooks requested that Mr. Vann show the property to Hall's. Mr. Vann testified as follows:
 I went over to his office, picked the people up, and I guess I spent at least a day with them, maybe a day and a half with the people selling the property. Well, they were going to buy it, then when we got down to the last thing, they said they wanted to know if we would lease it to them with an option to buy. I said, "Well, I'm one of the owners, I can say for myself that I would, but I will have to ask Mr. Nash." So I did call him and tell him what I had going and what the deal was on it and everything, and he said, "Well, you handle it, go ahead, it's all right with me whatever you want to do." So then I went with the Halls down to Mr. Michael Moore's office and he made up a quick paper, other papers were to be *Page 303 
made up at a later date, but just a form there to lease, or a lease agreement. And I signed those papers. I called him, he said, "Go ahead, we will sell it to them on that kind of deal." I said, "Okay." And everything was explained at that time about the whole transaction. I told him at that time we would have to pay Mr. Brooks and myself.
While there is evidence which indicates that the conversation occurred on or about October 6, 1976, it may be clearly inferred from the above quoted testimony that the agreement for the payment of a commission to the real estate brokers was verbally assented to by Mr. Nash prior to the execution of any instrument with Hall's.
On August 16, 1976 Mr. Vann, on behalf of the partnership, and Hall's signed an agreement to later execute a lease, which instrument also granted to Hall's an option to purchase the warehouse. The final lease, with the same option to purchase, was executed by Hall's and by both of the partners on October 6, 1976. On the same date Mr. Nash, Mr. Vann and Mr. Brooks each signed a two page written document, which, in short, provided that, in the event Hall's exercised the option to purchase the property, Mr. Nash and Mr. Vann would pay to each of the brokers, Mr. Brooks and Mr. Vann, the sum of $4,000; and it included provisions for brokerage fees in the event the option was not exercised but Hall's ultimately purchased the property after renegotiation.
Hall's exercised the option to purchase the warehouse and a deed was executed to them by Mr. Nash and Mr. Vann on August 23, 1978. Mr. Nash paid over $1,800 towards Mr. Brook's commission, but refused to pay any portion of Mr. Vann's fee. Hence this litigation.
Although, generally, a partner is not entitled to any compensation for services rendered by him to the partnership, the partners may agree that a partner shall receive compensation, or such an agreement may be implied. Code of Alabama 1975, § 10-8-43 (6); Murphy v. Dees, 293 Ala. 529,307 So.2d 1 (1975); 68 C.J.S. Partnerships § 94. The existence or non-existence of such a contract, or of the sufficiency of the consideration therefor, was a question for the trial court to determine from the facts and circumstances of the case and reasonable inferences therefrom. The court could have determined that, before any binding agreement was made with Hall's, the partners agreed that Mr. Vann, along with Mr. Brooks, would receive brokerage fees and that subsequently, on October 6, 1976, such agreement was merely reduced to writing and signed by the three parties concerned.
The written brokerage fee contract imports consideration by virtue of § 12-21-112 of the Code of Alabama 1975, which provides:
 Every written contract, the foundation of the action, purporting to be executed by the party sought to be charged . . . is evidence of the existence of the debt or that the party undertook to perform the duty for which it was given and that it was made on sufficient consideration, but may be impeached by answer, and, when so impeached, the burden of proof is on the defendant.
Lack of consideration is a matter that would constitute an avoidance or affirmative defense, and it is required to be especially pleaded under ARCP 8 (c), as was done in this case. The burden of proof was upon Mr. Nash to reasonably satisfy the trier of the facts, the trial court, from the evidence that there was no legal consideration for the promise to pay the brokerage commission to Mr. Vann. It was within the unique province of the circuit court to determine whether such burden of proof had been met. Its decision was contrary to the defendant's answer of no consideration.
Adequate consideration exists, or is implied, if it arises from any act of the plaintiff from which the defendant derived a pecuniary benefit (the profitable sale of the warehouse), if such act was performed by the plaintiff to the desired end, with the expressed or implied assent of the defendant (which the trial court must have ascertained from the evidence to have been given). That which creates and carries a benefit to the party promising, or causes *Page 304 
trouble, injury, inconvenience, prejudice, or detriment to the other party, is sufficient consideration. Christie v. Durden,205 Ala. 571, 88 So. 667 (1921). Conflicting evidence as to whether the consideration was adequate naturally creates a question of fact to be determined by the fact trier. Hyatt'sSupply Co. v. Lyle, 222 Ala. 460, 133 So. 3 (1931); Bush v.Russell, 180 Ala. 590, 61 So. 373 (1913).
Here, the evidence is such that it can be reasonably construed to support the judgment of the circuit court. For the reasons previously discussed, we cannot say that the trial court was clearly and palpably wrong with regard to there being adequate consideration to support the contract. The cases are too numerous to cite which hold that, on appeal, the findings of the trial court are presumed to be correct, if there is any evidence which supports its conclusion, unless it is clearly and palpably wrong. We must affirm.
The foregoing opinion was prepared by retired circuit judge Edward N. Scruggs while serving on active duty status as a judge of this court under the provisions of § 12-18-10 (e) of the Code of Alabama 1975. His opinion is hereby adopted as that of the court.
AFFIRMED.
All the Judges concur.