The plaintiff, Almus Chandler, appeals from a summary judgment for the defendants, Lamar County Board of Education ("the Board") and Don Coker, Superintendent of the Lamar County Board of Education. The circuit court held that the contract Chandler sued upon was void as being against public policy, and thus that Chandler's claim for a portion of certain gas and oil severance tax monies and his claim for the "burned-out school money" was invalid. Additionally, the summary judgment also related to a claim based on allegations of fraudulent inducement to enter into the contract. We reverse and remand.
The facts are as follows:
On March 11, 1983, Chandler and the Board, by its superintendent Coker, entered into an employment contract. Pursuant to the agreement, the Board hired Chandler as a consultant to "seek additional revenue for the Lamar County Board of Education." According to the agreement he was to seek revenue from "any and all sources," including grants, loans, and new and additional sources of revenue, e.g., the "burned-out school fund" and a portion, or at least a more favorable portion, "of Gas and Oil Severance Tax [money] that [was to become] due Lamar County, Alabama." As compensation, the Board agreed to pay Chandler a portion of those monies, based on a graduated rate.
After Chandler secured additional revenues for the Board from various sources, a dispute arose between the parties regarding Chandler's compensation. Chandler and the Board entered into an addendum to the agreement, as a proposed settlement of the dispute. The addendum purported to clarify and make a final settlement of any disputes arising out of the contract.
Furthermore, while the promise is not expressly stated in the addendum, Chandler claims that the Board orally promised to pay him $11,000.00 "plus all other monies owed to him in exchange for his relinquishment of his claim for oil and gas severance tax money." Chandler says that the Board failed to perform its oral promise under the addendum and refused to pay him all of the monies he claims is owing to him under the initial contract. The Board paid Chandler on his first claim for compensation but it refused to pay him on his subsequent claims. It reasoned that the contract was void because it violated public policy. Chandler sued the Board and Coker for damages, alleging that they had breached the contract. He also claimed that they had fraudulently induced him to enter into a contract that they did not intend to perform. The court granted the Board's and Coker's summary judgment motions on these claims. Chandler appeals.
 I.
Chandler maintains that the trial court erred in holding that the contract was void as being against public policy. The trial court does not state in its order why it reached this conclusion. After examining the record, we conclude that the considerations *Page 311 
central to the trial court's findings were:
1. the contract was contingent in nature, and
 2. it was a lobbying[1] contract under which the compensation was contingent upon the passage of certain measures.[2]
While there is some authority holding that contingent contracts in general are void as against public policy, this is not the law in Alabama. Jurisdictions prohibiting contingency contracts have done so in a variety of cases and tend to strike contingency agreements where the compensation is tied to, or predicated upon, the passage of legislation.
In 1913, this Court considered and set forth the proper way to view contingent contracts. That wisdom still rings true today. In Alabama:
 We are not disposed to attach controlling importance to the presence or absence of this fact, for the reason that, while the fact that his compensation is contingent will naturally stimulate the efforts of a broker or other agent and so hold out inducement to the use of improper means, and such contracts ought therefore perhaps to be subjected to the more careful scrutiny, yet the temptation to wrong in such cases is not different in kind from the seduction of self-interest which inheres in all business transactions, and, if the parties in truth contemplate no impropriety and the contract is irreproachable in other respects, our judgment is that it cannot be condemned because there is a stipulation for a contingent compensation. The contract is good or bad without regard to that circumstance. [Citation omitted.]
Bush v. Russell, 180 Ala. 590, 595-96, 61 So. 373, 375
(1913). Our approach to analyzing contingent contracts has been to look first at the face of the contract to determine if there is an "appearance of secrecy or deception to be practiced, . . . [or if] fraud or corruption [is] contemplated — [anything] to justify a judicial declaration that it is against fair dealing, good morals, or public policy." Bush,180 Ala. at 599, 61 So. at 376 (1913) (citation omitted). InHunt v. Test, 8 Ala. 713 (1845), this Court upheld a contract where one party contracted to "do all in his power to prevent the confirmation" of a land claim by the decedent's heirs and to obtain the passage of an act favoring other parties. This Court said, "The contract on its face does not import that any unfair, or improper means were to be resorted to." We prohibit contracts that are contingent in nature only where the "agreements [are] to do acts [that are] in themselves contrary to public policy, or agreements the performance of *Page 312 
which, by necessary inference, require or contemplate the resort to methods having a corrupting tendency." Bush,180 Ala. at 598, 61 So. at 376, quoting Houlton v.Nichol, 93 Wis. 393, 67 N.W. 715 (1896). See also,Stanton v. Embrey, 93 U.S. (3 Otto) 548, 23 L.Ed. 983
(1876). We give the following caution, however:
 It may be made to appear in proof that, notwithstanding the fair form of the contract, the parties intended or contemplated that some additional element of improper personal solicitation, secret and discreditable influence, or other unlawful means, should be used in effecting a sale of defendant's property. If so, the jury will, on issues properly framed, declare the contract to be void and unenforceable.
Bush, 180 Ala. at 599, 600, 61 So. at 376.
The Board argues that Hunt and its progeny are distinguishable from the present case. Here, they argue, Chandler's agreement required him to exert influence over governmental appropriations via the legislature. Along these lines, the Board argues that the public's interest is insuring that legislative decisions be made openly and absent from improper influences. We agree and observe that the merits of legislation should override private interests.
The terms of the contract provided that Chandler would "seek additional revenue . . . from any and all sources." Had the terms concerned monies that were within the exclusive control of the legislature and thereby required Chandler to lobby the legislature for the passage of the Oil and Gas Severance Act, our holding might have been otherwise. This act predated the Chandler contract by many years. Therefore, the legislature had already acted on the legislation. See Acts 1945, No. 2, p. 20. Therefore, Chandler's acts were not prohibited by the Ethics Act or public policy.
No evidence was presented to indicate that Chandler secured additional gas and oil severance tax revenues by lobbying the Alabama legislature. Chandler's efforts were directed to obtaining for the Board a more favorable division of the gas and oil severance tax money after it had been disbursed to the County pursuant to the statutory scheme. See Code 1975, §40-20-8(a).
 II.
The Board argues that the addendum supports the summary judgment insofar as it denied Chandler a portion of the gas and oil tax revenues.[3] The relevant part of the addendum provided:
 Whereas, a dispute has arisen concerning the interpretation of said agreement, in particular, with regard to whether the said A.A. Chandler is entitled to any compensation or commission from the re-division of the Gas and Oil Severance Tax of Lamar County, Alabama, and
 Whereas, in order to further clarify the terms of said agreement and to fully and finally settle any dispute concerning the same, the parties hereto agree as follows:
 1. That the said A.A. Chandler is not entitled to any fees, commissions, compensation or other renumerations of any sort from the Gas and Oil Severance Tax of Lamar County, and that the aforesaid agreement does not provide for the same, and it was never the intention of the parties to so do.
 2. That the said A.A. Chandler hereby expressly acknowledges that he will not now or at any future date make any claim for compensation from The Lamar County Board of Education under the aforesaid agreement because of his efforts associated with a re-division of the Gas and Oil Severance Tax of Lamar County.
 3. This Addendum is not intended to affect any other provision of said agreement. *Page 313 
The Board maintains that the parol evidence rule will bar the introduction of evidence tending to show Chandler's understanding of the agreement. We have duly considered the Board's position and we find it to be without merit. For the reasons that follow, we hold that parol evidence is admissible under the facts of this case. Section one of the addendum expressly provided that Chandler never had a claim to the gas and oil severance tax monies. A reading of the initial contract, however, makes it perfectly clear that Chandler did have a claim to those monies. The contract expressly provides that Chandler's compensation would come from a graduated percentage of "any and all sources." We therefore interpret section one of the addendum as being an unartful attempt to provide that Chandler would give up whatever claim he had to the gas and oil severance tax monies.
We next turn to the question of consideration. The addendum contains no integration clause or any similar language indicating that the addendum is a full embodiment of the terms of the "addendum contract." We further note that the addendum recites no consideration for Chandler's relinquishment of his claim to a percentage of gas and oil severance tax monies. It therefore becomes apparent that the only means by which any consideration on the Board's part can be shown is by parol evidence. Without such evidence, the Board's argument concerning the addendum must fail because the addendum does not show consideration. A contract unsupported by consideration is unenforceable. However, according to Chandler, the "addendum" agreement in the present action was not without consideration. He says there was consideration flowing from both sides. Specifically, he says he agreed to relinquish any claims he had to a percentage of the gas and oil severance tax monies in exchange for the Board's paying him $11,000.00 plus all other monies owed to him. Chandler's testimony would therefore be admissible to support his claim that the consideration for the addendum was never performed. The following is well settled:
 "The consideration of contracts in writing is in general open to inquiry, and it is not an infringement of the rule excluding parol evidence, to add to, vary, or contradict writings, to receive parol evidence of the actual consideration, for the purpose of determining its validity, or its failure, or that from any cause it is sufficient or insufficient to support the contract. [Citations omitted.]"
Hamaker v. Coons, 117 Ala. 603, 610, 23 So. 655, 658
(1908).
 III.
For reasons discussed, supra, we opine that the trial court erred in granting summary judgment for the Board as to Chandler's claim arising from the "burned-out" school money. We note that the record is devoid of a definitive answer of how Chandler obtained the "burned-out" school monies for the Board. The Board maintains that Chandler obtained the monies through illegal lobbying of the Alabama legislature. We have found no legislative act that specifically allocates monies to the Board; rather the appropriating act, Acts of Alabama 1984, Act No. 84-330, § 6, October 1, 1984, p. 799-807 appropriated $2,000,000.00 for "Burned-out schools and Facility Repair," and provided that the funding was "to be distributed based upon a procedure to be determined by the state Board of Education." It therefore becomes quite clear that the funds were not within the exclusive province of the legislature. Again, the Board presented no evidence to the trial court to support its contention that Chandler obtained the monies as a result of illegal lobbying activities.
 IV.
The trial court granted summary judgment against the plaintiff's fraud claim on its findings that Chandler's claim for money from the gas and oil severance tax and from the "burned out school" money was based on a void contract. In its order, the trial court found "that plaintiff [Chandler] would not be able to assert fraud based upon a fraudulent inducement to enter into a contract to pay a portion of *Page 314 
revenue monies since the former has been determined to be a void contract as against public policy."
In light of our holdings in parts I, II, and III, we conclude that the reasoning given by the trial court in support of the summary judgment on the fraud claim was incorrect. The question then becomes whether the summary judgment can be sustained on any other grounds. See Lowe v. East End Memorial Hosp. Health Centers, 477 So.2d 339 (Ala. 1985) (holding that on appeal, a summary judgment ruling will be upheld if it can be sustained on any grounds, even if the trial court gave an incorrect reason for its ruling). After reviewing the record and the defendants' arguments in support of the summary judgment, we conclude that there was no prima facie showing to support the trial court's holding that Chandler had no valid fraud claim. Therefore, the summary judgment was also improper as to the fraud claim.
The judgment is reversed and the case remanded.
REVERSED AND REMANDED.
TORBERT, C.J., and JONES, BEATTY and SHORES, JJ., concur.
[1] Title 36 is Alabama's statutory embodiment of the Code of Ethics. Ala. Code 1975 § 36-25-1, contains the following definitions:
 (6) LOBBYING. The practice of promoting or opposing the introduction or enactment of legislation before the legislature or the legislative committees or the members thereof, and shall also include the practice of promoting or opposing executive approval of legislation.
 (7) LOBBYIST. All persons who seek to encourage the passage, defeat or modification of any legislation, except members of the Alabama legislature or any person who, on an isolated basis and without the intent to continue beyond a single day during a session of the Alabama legislature, merely appears before a committee or committees of the legislature in his individual capacity, or on behalf of a corporation, partnership, association or other business entity, with which such person is regularly associated as an employee, officer, member or partner without receiving additional salary or compensation other than reasonable and ordinary travel expenses, to express support of or opposition to any legislation, and who shall so declare to a member, members or committee of the legislature with whom he discusses any proposed legislation.
[2] Ala. Code 1975, § 36-25-18, prohibits a lobbyist from receiving compensation contingent in nature.
 § 36-25-18. Registration of lobbyists required; filing of supplemental registration.
 (a) Every person employed or retained as a lobbyist shall register by filing a form prescribed by the commission within five days after the first undertaking requiring registration.
 (b) The registration . . . shall contain . . . the following information:
. . . .
 (6) A statement . . . that no compensation will be paid to the registrant contingent upon passage or defeat of such measure(s). [Emphasis supplied.]
 Acts 1973, No. 1056, § 19; Acts 1975, No. 130, § 1.)
[3] While the trial court's grant of summary judgment did not explicitly rest on this consideration, the defendants raise it in their briefs. We are therefore compelled to consider it on appeal. We are constrained to uphold the trial court's ruling if it is correct, even if the trial court gave an improper reason for its ruling. Lowe v. East End Memorial Hosp. Health Centers, 477 So.2d 339 (Ala. 1985).