LYONS, Justice.
Bear Stearns Securities, Inc. (“Bear Stearns”); Redstone Securities, Inc. (“Redstone”); First Cambridge Securities Corporation (“First Cambridge”); and Kenneth Adam Orr, First Cambridge’s chief executive officer, are defendants in an action pending in the Montgomery Circuit Court. They appeal from an order denying their motions to compel arbitration of claims made against them by the plaintiff, Renis Jones III. We affirm as to Redstone; reverse as to Bear Stearns, First Cambridge, and Orr; and remand.

Facts

In the fall of 1996, Jones had a trading account with Redstone. David Calicchio, another defendant in the pending action, was at that time a broker with Redstone. Calicchio changed brokerage firms in the fall of 1996 and began working for First Cambridge. Jones agreed to allow Calic-chio to transfer his account from Redstone to First Cambridge. In connection with that transfer, Jones, on November 11, 1996, signed a “Customer Agreement” with Bear Stearns that authorized Bear Stearns to act as the clearing broker for his account with First Cambridge. That agreement provides, in pertinent part:
“9. CLEARANCE ACCOUNTS. If any of your accounts is carried by any Bear Stearns entity as clearing agent for your broker, unless such Bear Stearns entity receives from you prior written notice to the contrary it may accept from such introducing broker without any inquiry or investigation (a) orders for the purchase or sale of securities and other property in your accounts) on margin or otherwise, and (b) any other instructions concerning your account(s) or the property therein. You understand and agree that Bear Stearns shall have no responsibility or liability to you for any acts or omissions of your broker, its officers, employees or agents. You agree that your broker and its employees are third-party beneficiaries of this Agreement, and the terms and conditions hereof, including the arbitration provisions, shall be applicable to all matters between you or among any of you, your broker and its employees and Bear Stearns and its employees.
[[Image here]]
“22. ARBITRATION. YOU AGREE THAT CONTROVERSIES ARISING *164 BETWEEN YOU AND YOUR INTRODUCING BROKER AND/OR BEAR STEARNS, AND ANY OF THEIR OR YOUR CONTROL PERSONS, PREDECESSORS, SUBSIDIARIES, AFFILIATES, SUCCESSORS, ASSIGNS, AND EMPLOYEES, SHALL BE DETERMINED BY ARBITRATION.
Jones alleges that in January 1997 Cal-icchio conducted three unauthorized transactions involving Jones’s account with First Cambridge, and that those transactions damaged him. He also alleges that Calicchio was not authorized to transact business in Alabama until January 23, 1997. Jones sued Calicchio and the other parties to these appeals in June 1998, alleging that those defendants had engaged in various improper activities relating to his investment accounts and that they had suppressed from him knowledge about Calicchio’s alleged illegal activities during late 1996 and early 1997. Bear Stearns removed the case to the United States District Court for the Middle District of Alabama, where all defendants except Cal-icchio filed motions to compel arbitration. The United States district court remanded the case, without ruling on those motions. In August 1999, all of the defendants except Calicchio filed motions to compel arbitration in the state-court action. After a hearing, the trial court denied the motions, holding that Jones had presented substantial evidence indicating “that the primary purpose of the agreement [with Bear Stearns] was to facilitate the illegal sales of securities by Calicchio [and that] Calic-chio was not registered to sell securities as required by Alabama law.” The trial court concluded that the agreement was “void under general legal and equitable principles of contract law.” As to Red-stone, the trial court concluded that there was “no merit to Redstone’s contentions that the arbitration provision governs the plaintiffs dispute with it.”

Bear Steams

Bear Stearns contends that the trial court erred as a matter of law in denying its motion to compel arbitration. Bear Stearns acknowledges that it, as the party seeking to compel arbitration, had the initial burden of proving the existence of a contract calling for arbitration and of proving that the contract evidences a transaction affecting interstate commerce. Once Bear Stearns met that initial burden, the burden then shifted to Jones to prove that the arbitration agreement was not valid or that it did not apply to the dispute in question. See TranSouth Fin. Corp. v. Bell, 739 So.2d 1110 (Ala.1999). Jones argued before the trial court, as he does before this Court, that because Calicchio was not licensed to sell securities in Alabama until January 1997, the agreement with Bear Stearns that Jones executed in November 1996 was illegal and unenforceable.
In response, Bear Stearns argues that the Customer Agreement Jones signed in November 1996 was between him and Bear Stearns. Calicchio was not a party to that contract, although he apparently did ask Jones to sign it during the course of his transferring Jones’s brokerage account from Redstone to First Cambridge. However, we agree with Bear Stearns that no provision in the contract renders it illegal or void. The agreement clearly provides that Bear Stearns was to act as a clearing broker for First Cambridge, not Calicchio. Evidence submitted to the trial court demonstrates that First Cambridge and Orr were both licensed by the Alabama Securities Commission to do business in Alabama at the time Jones executed the agreement with Bear Stearns. Nothing about Jones’s agreement with Bear Stearns required or contemplated illegal activity of any kind. The *165 contract simply provides for Bear Stearns to act as the clearing broker for Jones’s account with his broker-First Cambridge. The fact that certain illegal actions were later taken by Calicchio while he was an employee of First Cambridge does not make the contract between Jones and Bear Stearns illegal. See Chandler v. Lamar County Board of Education, 528 So.2d 309 (Ala.1988), holding that if the four corners of a contract did not require illegal activity, then the contract was not void as illegal, and following the holding in Bush v. Russell, 180 Ala. 590, 61 So. 373 (1913), in which this Court held that a contract that can be performed in a legal manner is not rendered illegal simply because certain action that took place in the performance of the contract was illegal.
Because the contract between Bear Stearns and Jones has not been shown to be invalid, the arbitration clause contained in that agreement is due to be enforced. The trial court erred in denying Bear Stearns’s motion to compel arbitration of Jones’s claims against it.

First Cambridge and Orr

First Cambridge and Orr have adopted Bear Stearns’s arguments regarding the legality of the Customer Agreement between Jones and Bear Stearns. Because that agreement is valid, First Cambridge and Orr argue, they are entitled to compel arbitration of Jones’s claims against them because they are expressly made third-party beneficiaries of the agreement, including the arbitration provisions therein. We agree. The agreement clearly provides that it applies to Jones’s broker, First Cambridge, and to the broker’s employees, which would include Orr. Because First Cambridge and Orr are express third-party beneficiaries of the Bear Stearns/Jones Customer Agreement, they have all of the rights that exist under that contract, and they can enforce the arbitration clause set out in the contract. See Ex parte Stamey, 776 So.2d 85 (Ala.2000).
Because the arbitration clause contained in the Bear Stearns/Jones agreement is due to be enforced as to First Cambridge and Orr as third-party beneficiaries, the trial court erred in denying their motion to compel arbitration of Jones’s claims against them.

Redstone

Redstone first argues that the language of the Bear Stearns/Jones agreement is broad enough to entitle Redstone to compel arbitration of Jones’s claims. However, after reviewing that document, we conclude that the arbitration clause in the Bear Stearns/Jones agreement is not broad enough to encompass Jones’s claims against Redstone and, therefore, that that document does not entitle Redstone to compel Jones to arbitrate his claims against it. See Southern Energy Homes, Inc. v. Gary, 774 So.2d 521 (Ala.2000).
Redstone also argues that it is entitled to compel arbitration of Jones’s claims against it on the basis that those claims are inextricably intertwined with his claims against Bear Stearns and First Cambridge. Redstone relies on Sunkist Soft Drinks, Inc. v. Sunkist Growers, Inc., 10 F.3d 753, 757 (11th Cir.1993), cert. denied, 513 U.S. 869, 115 S.Ct. 190, 130 L.Ed.2d 123 (1994) (quoting McBro Planning & Dev. Co. v. Triangle Elec. Constr. Co., 741 F.2d 342, 344 (11th Cir.1984)); and Ex parte Napier, 723 So.2d 49 (Ala.1998). In Napier, we addressed the arbi-trability of a party’s claims against nonsig-natories to an arbitration agreement when the party’s claims included conspiracy allegations. Like the nonsignatory defendants in Napier, Redstone contends that Jones’s claims against it are so “intimately founded in and intertwined with” his claims against defendants that are entitled *166 to arbitration, that all of the claims are subject to arbitration. After reviewing Jones’s complaint, we conclude that Jones’s claims against Bear Stearns, a signatory to the agreement; his claims against First Cambridge and Orr, express third-party beneficiaries to that agreement; and his claims against Redstone, a nonsignatory, are not inextricably intertwined so as to require arbitration of all claims. Jones’s claims against all of the defendants relate primarily to the conduct of Calicchio, who was an employee of Red-stone before he became an employee of First Cambridge, and who was Jones’s broker at both firms. Jones’s claims against Redstone primarily relate to his allegation that Redstone knew that Calic-chio had committed certain violations of securities regulations and that Redstone suppressed that information from him and from First Cambridge and Bear Stearns. Jones does include a conspiracy claim in his complaint, but that claim carefully avoids allegations linking Redstone’s conduct to the conduct of other defendants. Compare Napier and Gary, supra, and Med Center Cars, Inc. v. Smith, 727 So.2d 9 (Ala.1998).
Because we conclude that Jones’s claims against Redstone are not inextricably intertwined with his claims against Bear Stearns and First Cambridge, Redstone is not entitled to enforce the arbitration clause contained in the Bear Stearns/Jones agreement. The trial court properly denied Redstone’s motion to compel arbitration of Jones’s claims against it. The trial court, of course, has the inherent power and discretion to determine whether to stay the litigation against Redstone pending arbitration of Jones’s claims against the other defendants. See Med Center Cars, 727 So.2d at 21 (Lyons, J., concurring in the result as to Part II).

Conclusion

We affirm the trial court’s order insofar as it denies Redstone’s motion to compel arbitration; we reverse that order insofar as it denies Bear Stearns, First Cambridge, and Orr’s motions to compel arbitration; and we remand the cause for further proceedings or orders consistent with this opinion.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
HOOPER, C.J., and MADDOX, COOK, and JOHNSTONE, JJ„ concur.